INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. EVARISTO GARCIA.

No. 2730.

1. **Deafness of Person Injured Upon Railway Track.**—The deafness of the plaintiff being conceded, in determining whether the servants of the defendant company used such care as was incumbent upon them, the jury should have been given to understand, in the absence of knowledge on their part that the plaintiff was deaf, that the conduct of such employes should be considered as though plaintiff was not thus deficient, and their care measured from that standpoint.

2. **Same—Duty of One with Imperfect Senses.** — A greater degree of care would be incumbent upon a deaf man in crossing or walking upon a railway track than on one having his senses perfect.

3. **Presumptions Upon Seeing a Person on Railway Track.**—The employes of a railway running a train, on seeing a man approaching the track, or walking upon it, are authorized to presume that he will halt, or go from the track upon being notified of danger. It is only incumbent on them to stop the train when it is manifest that such person does not heed the approaching danger.

4. **Contributory Negligence.**—By contributory negligence we understand to be meant such act or omission on the part of a plaintiff as an ordinarily prudent man would not do or suffer under similar circumstances, which, concurring with a negligent act or omission of a defendant, becomes the proximate cause of an injury.

5. **Same—Limitations of.**—Contributory negligence on part of a plaintiff defeats his action if based wholly on negligence; but in determining whether it exists in a given case the age, intelligence, and capacity of a plaintiff must be looked to, as well as his act or omission at the time of the accident.

6. **Fact Case.**—See facts requiring that the issue of contributory negligence should have been submitted. See also charges held inapplicable to the facts in evidence.

ERROR from Webb. Tried below before Hon. J. C. Russell. The opinion states the case.

*J. O. Nicholson*, for plaintiff in error.—1. The charge of the court should have been formed upon the issues made in the testimony. Rev. Stats., art. 1317; Railway v. Faber, 63 Texas, 344; Railway v. Smith, 62 Texas, 254; Railway v. Ryon, 70 Texas, 58–60.

2. If the plaintiff by his own acts proximately contributed to his injuries he can not recover. Railway v. Bracken, 59 Texas, 73; Railway v. Smith, 62 Texas, 254; Railway v. Ryon, 70 Texas, 68–70; Railway v. Houston, 95 U. S., 702; Railway v. Stansbury, 4 Am. and Eng. Ry. Cases, 577.

*C. A. McLane, R. L. Randall*, and *A. Winslow*, for defendant in error. The negligence of the plaintiff in error, and not that of defendant in error, was the proximate cause of the injury, and plaintiff in error is liable for the damages caused thereby, and the verdict is not contrary to the law nor the evidence. Railway v. Weisen, 65 Texas, 443; Railway v. Lowry, 61 Texas, 149; Railway v. Corbett, 49 Texas, 581; Shearm. & Redf. on Neg., sec. 25; Whart. on Neg., secs. 388, 389; Cool. on Torts, 675, 679; Wait's Act. and Def., p. 584; Thomp. on Neg., 443; 4 Am. and Eng. Enc. of Law, p. 96, note 3; p. 75, note 2; p. 98, note 3.

STAYTON, CHIEF JUSTICE.—Appellee's evidence, in so far as necessary to be stated, is as follows:

"I do not remember when I was hurt, as my memory has not been good since I was hurt. * * * I was coming from where I had my flocks to town when I was hurt. I had a defect in my hearing at the time I was hurt. * * * I was deaf at the time I was hurt. The train took me up and took me home. The doctor cut my leg off. * * * I was crossing the railroad at the time I was hurt. It was a road at crossing. I

looked to the right and left along the track when I came up to the track, but I did not see any train. I was only on the track a moment before I was struck down. I was just kicking my toe while crossing the track. * * * I was traveling a road which crossed the railroad at time I was hurt. People travel on that road on foot and horseback and in wagons. It is called the Road of the Eagle."

On cross-examination: "There were boards between the rails at the place where I was crossing. The carts do not cross much there now, but those who have lands along there use it some. It is abandoned by the people who have carts. It was the old Eagle Pass road which at that time had been abandoned. It was less than half a league to the nearest house. * * * I was hurt about 11 o'clock a. m. I was coming to town at the time I was hurt. The country along where I was hurt is called a plain, but there are a few mesquite trees. The railroad is clear, but there are some mesquite trees on both sides. The railroad is straight along there where I was hurt. As a prudent man, I looked along the track in both directions as far as I could see, but I saw no train. Looking to the right coming this way there were some mesquite trees which could have impeded my sight. * * * I turned this way and saw something like a figure, and I was knocked down. I had been on the track a quarter of a minute before I was struck. I was shaking my foot trying to get a stick out of my shoe while I was walking along. I was kicking my foot against the cross tie to get the stick out. I was deaf at the time, just as I am now. I can not hear anything at all now. * * * I heard the sound that was passing over me after I was already struck down. I was hurt within the corporate limits of the city of Laredo. I do not know where the limits are. I can not read or understand the English language."

Redirect, plaintiff testified: "I looked up the track in the direction the train came as far as the round house and could see no train at all. It looked like there were some engines around the round house; as well I can judge it was one league from the place where I was hurt to the round house, although I am not a good judge. It was not more than a league to the house. * * * I do not know how many Eagle Pass road crossings there were at the time I was hurt. I only know of one, and I was hurt at the main crossing."

Recross by defendant, he said: "It was at the main crossing of the Eagle Pass road where I was hurt. It was not abandoned at the time and is it not abandoned yet, and it is still used by the public. The round house is the nearest house to the road crossing; it is less than a half league."

C. A. McLane, a witness for plaintiff, testified: "I am one of plaintiff's attorneys in this case. * * * I went out with plaintiff and Mr. Winslow and Mr. Randall, my associate counsel in this case, to the spot

where plaintiff said he was hurt. This spot is about three-fourths of a mile north of the round house. The Texas-Mexican Railway crosses the International & Great Northern track two hundred yards north of where plaintiff said he was hurt. * * * It was on the old Eagle Pass road. I and Mr. Winslow stepped the distance from where the plaintiff says he was hurt to a stop sign fifty yards south. On the other side of the Texas-Mexican crossing there was another stop sign. There was a plain stretch of track where there was no obstruction to the view of the track for a distance of seven hundred and fifty yards south from the point where plaintiff said he was hurt. There is a curve in the track about two hundred yards north of the round house. It was possible for a man on a train with due caution to see a man on the track at the point where plaintiff said he was hurt from said curve."

The train which injured appellee was moving north, and the evidence shows that the track of the Texas-Mexican Railway where it had crossed the railway of appellant had been taken up.

Only two other witness testified to the manner in which appellee was hurt, and their testimony was, so far as necessary to be stated, as follows:

Joseph Miller, a witness for defendant, testified in substance as follows: "I am a locomotive engineer. On September 10, 1885, I was running an engine on the International & Great Northern Railway from Laredo to San Antonio. On the morning of the 10th about nine o'clock I started from the depot at Laredo as engineer on a freight train of cars north bound for San Antonio. There were about sixteen cars in the train besides the engine and caboose; the cars were heavily laden with cattle; Augustus Smith was conductor. * * * When I had gone about two and a half or three miles on the road north of said depot I saw a man ahead of me on the track about a half mile, walking on the track towards the north. As soon as I saw him I blew the whistle of the engine to give him warning that the train was approaching him. I kept blowing the whistle until the train had gotten within three hundred or three hundred and fifty yards of the man on the track, and seeing that he did not get off the track I whistled a signal for brakes to be applied. The brakes were applied and I at the same time reversed the engine to stop the train, and the train was stopped as quickly as it was possible to do. When the train got within fifteen feet of the man on the track he looked back, and I saw his face as he looked back; just as soon as he looked back he began to walk off the track to the right hand side, but he walked slowly and deliberately off the track, but did not get off in time, because before he had gotten entirely off the track the engine struck him and knocked him down. When I passed him he was lying in the ditch about eight feet from the track. I stopped the train as quick as I could. The man was put in the caboose, and I backed the train to the depot in Laredo and turned the man over to Mr. Campbell, the station agent.

When I backed the train to where the man was lying on the ground, and before we put him in the caboose, I asked him why he did not get off the track when I whistled. He said nothing, but put his hand up to his ear and made a motion, which to me indicated that he could not hear.

"At the place where the injury happened the railroad track was in first-class condition. The track is straight for over half a mile back from the point where the injury occurred towards Laredo, and north towards San Antonio for four or five miles; the injury occurred on a straight track; the track was level and smooth. The right of way along said track was open and clear, with probably here and there a small mesquite bush on it, but not enough to obstruct the view along said track, and the country on either side of the track where the injury occurred has mesquite brush on it, but not thick. There were no houses or public improvements or streets near the place where the injury occurred. * * * The track was in plain and unobstructed view for the distance I have mentioned; that is, half a mile on one side and four or five miles on the other side. The plaintiff was about a half mile ahead of the train when I first saw him walking on the track; he was just walking slowly along in the direction the train was moving. * * * When I first saw him I blew the whistle several times and until I got near him, to warn him of the approach of the train, and when I got near him I whistled down brakes, and the conductor and brakemen applied the brakes * * * and at the same time * * * I reversed the engine to stop the train, and the train was stopped as quickly as possible. I do not know the plaintiff personally. The first time I ever saw him that I know of was the day he got hurt. I do not know of my own knowledge whether at the time plaintiff got hurt he was suffering from any defects in his hearing or not. I know that after he got hurt, * * * and I asked him why he did not get off the track when I whistled, that he acted in such a way by putting his hand to his ear as to give me to understand he was deaf."

Cross-examined: "When I first saw plaintiff on the track my engine and train were running at about eighteen or twenty miles an hour, and I was about half a mile from him, * * * and without what is known as the yard limits. My engine and train were provided with the best and latest improved brake appliances now in general use on the freight cars running on the great railway trunk lines in the State of Texas. The engine had a whistle and a bell, which were blown and rung; also a hand brake; * * * the cars on the train had hand brakes. * * * The Mexican National crossed defendant's track about 2¼ miles north of Laredo depot, but about that time the Mexican National track was torn up, and on the 10th day of September, 1885, the said crossing was not in use and trains of defendant's road did not have to stop there."

Augustus Smith testified as follows: "During September, 1885, I was

conductor of the train of defendant's road. * * * On September 10, 1885, * * * the train on which I was conductor left Laredo, bound north. I was on the fourth or fifth car from the engine, and saw a man walking on the track going in the same direction the train was moving. When the train got within a reasonable distance of the man the engineer whistled for him to get off the track; the man was in the middle of the track going north, same way the train was going. The man was deaf and of course did not hear the whistle. When the train got near the man the engineer whistled 'down brakes,' to draw the man's attention, * * * but the man could not hear, and the engine struck him, knocked him down and run over his foot. * * * The condition of the track where the man was hurt was first-class; it was straight, and the country on each side was open; to the north the track was straight for several miles, to the south for half a mile. The country was open, with a little mesquite in it, but not much. There were no houses, streets, or public improvements of any kind in that vicinity. The right of way was clear all along the place where the accident occurred, except here and there a mesquite bush which had grown in the last year or two, but not enough to obscure the view of the train; to the north I could see several miles along the track, to the south about half a mile the track was in plain and unobstructed view. When I first saw plaintiff on the track he must have been a half a mile ahead of me, walking on the track; * * * the whistle was sounded to warn him of the approach of the train, and when the man did not get off the engineer whistled for brakes, and the brakes were applied to stop the train to keep from running over him. When the whistle sounded plaintiff was about 400 yards ahead of the train, and when the whistle sounded 'down brakes' the man was about one hundred yards ahead of the train. I did not know plaintiff before the time he was hurt; never saw him before."

If appellee's statement of the manner in which he was injured be accepted as true, then a case probably exists in which it might be held that his own negligence did not contribute to the injury, but it is difficult to believe that his version of the transaction is correct.

He states that he was injured while crossing the track, on which he was not more than fifteen seconds time, ordinarily more than sufficient to enable one in no way disabled to cross a railway track; that he looked in the direction from which the train came before entering on the track and saw no train approaching, although he could and did see to the round house, which, according to his own and other testimony, must have been distant at least three-quarters of a mile.

His petition seeks a recovery on the ground that he was injured while crossing the railway track at a public crossing, and as evidence of negligence on part of appellant alleges that it was the duty of appellant to stop its train at the point where its track was crossed by the track of the Texas-

Mexican Railway Company, which, however, is shown not to have been necessary, because that track had been taken up before that time and no longer used; but had this not been so, that point of crossing was about two hundred yards north of the place where appellee was injured.

. The charge of the court was in the main based on the theory that appellee was walking on the track, as stated by the other witnesses, but the charges were not strictly applicable to the uncontroverted facts of the case.

That appellee was deaf is a conceded fact, and in determining whether the servants of appellant used such care as was incumbent on them the jury should have been given to understand, in the absence of knowledge on their part that appellee was deaf, that the conduct of such employes should be considered as though appellee was not thus deficient, and their care measured from that standpoint.

If appellee, as he states, was attempting to cross at a public crossing he was not a trespasser, and it was incumbent on the employes of appellant in such case to exercise at least ordinary care for his protection; and what would be ordinary care in case of exposure to danger of a man possessed of all his faculties would not be such care as to one who was deaf, and therefore unable to hear the warnings given of the approaching train.

In either case the supposition might be reasonably indulged and acted upon that appellee, having ability to do so, would leave the track when warned of his danger; but the act which would warn the man whose hearing was unimpaired would not give warning to the deaf man.

In the absence of knowledge to the contrary, or of some fact which ought to arouse suspicion that this is not true, employes operating a railway train may assume that a man seen at a public crossing or elsewhere on the track is in possession of all his senses, and that care for his own safety will induce him to use them, and to act on the warnings conveyed through them.

On the other hand, "deafness, so far from excusing one for a failure to use his eyesight, rather imposes upon him the duty of increased vigilance in the employment of that faculty; and when contributory negligence is charged it is, as a rule, not sufficient for the plaintiff to urge his deafness by way of excuse. It may be of the very essence of the plaintiff's default that being deaf he put himself in a position where his deafness would especially expose him to injury. The rule is *caveat surdus.*" Beach on Con. Neg., 66; Railway v. Smith, 62 Texas, 254.

Among other like charges the court gave the following:

"If you find from the evidence that the plaintiff was walking on the track of defendant company's railway when he received the injury, if he received any, and that he may have been wrongfully on the track, or being rightfully there may have negligently remained upon it until too late

to avoid collision, nevertheless if the company's servants managing the train discovered the danger to which the plaintiff's negligence was exposing him in time to prevent the accident, or at least to lessen the injury, by the exercise of ordinary care or diligence on their part, but negligently failed to do so, the company is liable in damages. The negligence of the company in failing to stop or sufficiently slacken the train when the danger was discovered, and not the trespass or negligence of the plaintiff, was the proximate cause of the injury, if any injury he received, under such state of facts."

In view of the facts this charge was misleading if not erroneous.

Appellee being deaf was exposed to danger, notwithstanding all the warnings which were or could have been given to him, from the time he entered upon the track; and he was discovered in time for the employes to have stopped the train before it reached him, but it was not discovered until after the accident that his condition was such as to render that care to protect him which would ordinarily be sufficient to protect a man similarly situated insufficient in his case.

Appellant asked the following charges, which were refused:

"The jury are instructed that if you believe from the evidence, if any, that when defendant's employes in charge of the train became aware or had reason to believe that plaintiff would not probably leave the railroad track in time to avoid collision with said train, that then they used ordinary care to prevent such collision, then you will find in favor of defendant.

"The jury are instructed that if they believe from the evidence that as soon as the agents and employes of defendant became aware that plaintiff would not move off the railway track, they used all the efforts in their power and within their means and ability to stop the train and prevent the same from striking plaintiff, but that notwithstanding such efforts they were unable to stop the train in time to prevent the injury, then said agents and servants were not guilty of negligence, and your verdict must be for defendant."

These charges were applicable to the case made by the facts, would have called the attention of the jury to a vital issue in the case, and the first was strictly correct, even if appellant was injured at a crossing, and they both conceded as much as appellee could ask if he was injured while walking on the track at a place other than a crossing.

If appellee was injured while walking on the track, as evidence for appellant tends to show, in the absence of all evidence tending to show that he had permission or right to be there, it must be held that he was injured while trespassing on appellant's track; and there is no single fact, if that testimony be true, to relieve him from the charge and effect of contributory negligence.

By contributory negligence we understand to be meant such act or omission on the part of a plaintiff as an ordinarily prudent man would not do or suffer under similar circumstances, which, concurring with a negligent act or omission of a defendant, becomes the proximate cause of an injury.

Can any one suppose that any prudent man bereft of the sense of hearing would have pursued under the same circumstances the course of conduct attributed to appellee by witnesses for appellant? He must have known the danger of his course if he had ordinary intelligence; but if appellant's witnesses tell the truth, he used no precaution for his own safety.

It would be a harsh rule which would fix liability on a defendant for a failure to use more care for the safety of a plaintiff than he thought necessary himself to use.

If the accident occurred as witnesses for appellant state, there can be no doubt that by the exercise of ordinary care appellee could have avoided it.

In Railway Company v. Smith, 52 Texas, 185, it was said that "the law presumes that a person walking upon a railroad track will leave the same in time to prevent injury from an approaching train of which he has knowledge, or should have by the ordinary use of the senses of hearing and seeing, and the managers of the train may act upon this presumption."

It was for the jury to determine what the facts were, and charges should have been given with reference to the facts in evidence.

The effect of contributory negligence on a plaintiff's right to recover has been recognized in all the cases passed on by this court in which it was involved, and the rule fixing liability or denying it on the basis of comparative negligence has been condemned; but there may be expressions in some of the opinions from which it may be inferred that this court intended to hold that notwithstanding the existence of contributory negligence on the part of a plaintiff a defendant may be liable for a failure to use ordinary care.

We do not understand such a ruling to have been intended in any of the cases involving injuries on railway tracks or elsewhere, but understand the rule to be that contributory negligence on the part of a plaintiff defeats his action if based solely on negligence; but that in determining whether contributory negligence exists in a given case, the age, intelligence, and capacity of plaintiff must be looked to as well as his act or omission at the time of the accident. What state of facts will give right to a recovery when a plaintiff is shown to have been guilty of contributory negligence it is not now necessary to consider.

We do not think that the charges gave the jury a proper conception of the law which should have governed them; the charges referred to should

have been given; and a new trial should have been granted on the facts; and for these reasons the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 14, 1890.