The St. Louis & San Francisco Railway Company v. John Herrin.

No. 221.

1. Contributory Negligence—Trespasser.—In an action against a railway company for damages for personal injuries, where it appears that the plaintiff was injured while walking on the track, and there is no evidence showing that he had permission to be there, it must be held that he was trespassing upon the railway company's track when injured, and therefore guilty of contributory negligence.

2. Negligence.—The law presumes that a person walking on a railway track · will leave the same in time to prevent injury from an approaching train of which he has knowledge, or should have, by the ordinary use of the senses of hearing and seeing, and the managers of a train may act upon this presumption. In this case appellee, plaintiff below, was seen by the engineer and fireman for some distance, alternately walking and running ahead of the train, but from his conduct it was evident to said employes that he was aware of the approaching train, and was apparently in possession of the ordinary faculties common to mankind. There is no circumstance appearing from the record that was calculated to cause the engineer to believe or warn him that appellee was not going to leave the track in time to prevent being struck by the engine, and when he did realize it he did all he could to prevent injuring appellee. It is held that it was not unreasonable for the engineer to presume that the appellee would get off of the track in time to prevent being hurt, and that the facts all show that the plaintiff contributed to his own injury, and that there is nothing to show liability on the part of appellant.

Appeal from Lamar.    Tried below before Hon. E. D. McClellan.

*Alexander & Clark*, for appellant.— 1.  Plaintiff was guilty of contributory negligence in going upon defendant's track and walking or running down same, and his contributory negligence was continuous up to the time of the collision, for the reason that he had express knowledge of the approach of the train up to the time he was knocked from the track.

2.  Defendant's employes in charge of its train had a right to act on the presumption that he would leave the track in time to avoid the injury.    Railway v. Garcia, 75 Texas, 584; Railway v. Smith, 62 Texas, 254; Hughes v. Railway, 67 Texas, 598; Railway v. Smith, 52 Texas, 178; Railway v. Bracken, 59 Texas, 71; Railway v. Kutac, 72 Texas, 651; Railway v. Graves, 59 Texas, 332; Hoover v. Railway, 61 Texas, 503; Railway v. Houston, 95 U. S., 702; Beach on Con. Neg., 19, 20; Railway v. Dean, 76 Texas, 74; Railway v. Porfert, 72 Texas, 353; Hughes v. Railway, 67 Texas, 598.

*Maxey, Lightfoot & Denton,* for appellee.—It is the duty of a railway company, seeing a person upon its track, even should he be guilty of contributory negligence in being there, to use ordinary and proper care and prudence to prevent injuring such person. And if after it was discovered by the employes of appellant in this case that appellee did not intend to leave the track in time to avoid injury, it was their duty to have avoided it, if by the use of ordinary and proper care they could have done so. Railway v. Hanks, 78 Texas, 300; Railway v. Weisen, 65 Texas, 447; Inland Co. v. Tolson, 139 U. S., 558; 1 Thomp. on Neg., 443, 4498, 4499; 6 Wait's Act. and Def., 584; Isbell v. Railway, 71 Am. Dec., 81; Norris v. Lithfield, 69 Am. Dec., 550; Bish. on Non-Cont. Law, 485.

RAINEY, Associate Justice.—Appellee, John Herrin, while walking on appellant's railroad track, was injured by being struck and thrown from the track by appellant's locomotive engine. Appellee brought suit against appellant for damages, and recovered a judgment for $500, from which an appeal was taken.

The appellant complains that the verdict is not supported by the evidence, because the injury was caused by the contributory negligence of the appellee.

Plaintiff testified: " On June 6, 1891, I was on the railroad track at Lenoir, a station between Paris and Red River, on the St. Louis & San Francisco Railway. I left the river on the dirt road and came south toward Paris, having been informed there was a station about five miles from the river. When I got to the railroad track I got upon it, and was walking down the railroad track when I heard the train coming, and I was trying to get to the depot in order to take the train and go to Paris. I heard the whistle blow, as I thought, for the station, and the train was then perhaps a half-mile off, and I looked back and saw it and looked to see where the depot building was, and observed the section house and took it to be the depot, and kept on toward it. I had never been along the road before. The main track I think is always next to the depot, and I thought I saw the depot and would go on the track away from the depot, and be on the side track. I was running at the time I was struck, trying to get to the depot. The section house is on the west side of the track, and I thought the train would stop at the depot, and I thought by running fast I could get there in time to get on the train. I started down the track and thought I was on the side track or switch. The house was painted a brown color, and is the usual color, I believe, depots are painted. The train struck me, but I don't know where. I was knocked off the track and thrown down on something hard. At the time I heard the train whistle it was about one-half or a quarter of a mile from me, and it whistled again just about the time I was struck. I heard no bell

ring or whistle until just as I was struck. I did not have time to get off of the track after it whistled the last time, that is, after the signal was given to get off. I do not remember anything that happened after I was struck until I found myself on the train going to Paris. I was a few feet north of the platform when I was struck. The train was running very fast at the time. I thought it would slow up for the station, and believed I was on the side track."

On cross-examination, plaintiff testified: "I can not say how long I had been on the track, but I had probably come between one-fourth and one-half a mile. Part of the time I was running and part of the time I was walking. I heard the train whistle for the station, and knew it was coming. I looked back once when I first heard it, and ·it was about a half-mile off."

H. S. Fowler testified, for plaintiff, by deposition, as follows: "The train was flagged. The rate at which the train was running before it was flagged was thirty miles an hour, but afterward it was slowed up to about twenty miles per hour, then a sudden stop was made just before plaintiff, John Herrin, was thrown from the track. Just before the train was stopped the engineer gave several danger signals, such as are given when something is on the track, and I started to the door of the mail car. Just as I reached the door the train began suddenly to check up, and as I reached the door and looked forward I saw John Herrin as he was thrown from the front of the engine into the mud. It was not more than fifteen seconds from the time I heard the danger signals until I saw the plaintiff fall. There was a bell on the engine, but I cannot say positively that the bell was ringing, as I had nothing to call my attention to this fact. It is customary for the fireman to ring the bell for several car lengths before reaching a station."

H. H. Washburn, witness for defendant, testified as follows: "I was present at the time plaintiff was injured, and was conductor on the train that struck him. The accident occurred between 8 and 8:10 in the morning, at Lenoir. Lenoir is not a regular station or stopping place. It is what is known as a flag station. When plaintiff was struck he was sixty or eighty feet north of the platform. I never saw plaintiff until after he was struck, and just about the time he hit the ground. I felt the emergency brake applied, and the whistle sounded, and this attracted my attention, and I stepped out onto the platform of the car and saw plaintiff just about the time he struck the ground. When plaintiff was struck I think the train must have been running between five and eight miles an hour. After it struck plaintiff it ran sixty or seventy feet before it was stopped. I know the whistle was blown and the brakes applied before plaintiff was struck, but don't know whether he heard it or not."

The witness testified on cross-examination: "The train was not be-

hind time, but was exactly on time.   At Lenoir the track is straight for over a half-mile.   I think there is a public road on the north of Lenoir 200 or 300 yards from the station.   There is a side track, but no station house.   The plaintiff was about 60 feet from the platform when he was struck.''

C. B. Coleman, witness for defendant, testified, by deposition, as follows: ''I was present at the accident when plaintiff was injured.   Was the engineer of the train, in the employ of defendant.   Plaintiff was hurt at Lenoir, a flag station, where there is a platform.   Plaintiff was about 60 feet from the platform when he was struck by the engine.   When I first saw plaintiff he was walking on the track, about or near where the switch connects with the main track; he then went down the track after looking back.   I blew the whistle, reversed the engine, put on the air brakes, and tried to stop the engine.   When the train struck plaintiff it was running about four miles an hour, and went about 40 feet after it struck him before it stopped.   Plaintiff knew the train was approaching in plenty of time to have left the track before receiving the injuries.   I know this fact, because when I blew the whistle plaintiff turned his head and looked back at the train.   At the time of the injury the train was on time.   At the place of the injury the engineer could have seen a man on the track for nearly a mile, as it was perfectly straight.   I think there is a public road that crosses the railway track about a half-mile south of Lenoir.   When struck the plaintiff was about 60 feet from the platform.   When I saw him remaining on the track I applied the air brakes, blew the whistle, reversed the engine, and tried to stop the train.''

Defendant introduced in evidence the deposition of C. E. Horning, as follows:  ''I was present at the time plaintiff was injured, and was fireman on the engine.   When plaintiff was struck he was about 50 feet from the platform, walking up the track toward the platform on the main line.   He looked as if he was trying to reach it ahead of the train.   I rang the bell and the engineer blew the whistle, applied the air, and reversed the engine, and tried to keep from running over him after it looked like he was not going to get off the track.   At the time plaintiff was struck the train was running six or eight miles an hour.   After the whistle blew and the bell rang he walked faster, and I think looked back.   The whistle was blown and the bell rung in plenty of time for plaintiff to have left the track before he was struck.''

To the cross-interrogatories he answered:  ''At the place where plaintiff was injured the engineer could have seen him for two miles or more.   A public road crosses the railroad south of the section house, about 150 yards from the platform.   Plaintiff was about 50 or 75 feet from the platform when he was struck.   I rang the bell and hallooed at him, and the engineer blew the whistle and gave notice that the train was coming.''

Defendant also introduced in evidence the deposition of Frank Brogan, as follows: "I was brakeman for defendant company, and was present. at the time plaintiff was injured. The train was the first class southbound passenger train, five coaches. I think the accident occurred about 8 o'clock in the morning, on a clear day, at Lenoir, a flag station, where there is a. platform but no depot. The plaintiff was struck about 75 feet from the platform. I first saw plaintiff when the engine struck him. He was on the track in front of the engine. I took no precaution to avoid injuring. him, because I could take none. The train was going seven or eight miles an hour when it struck him. I suppose it ran about 75 feet after it struck him before it stopped. Plaintiff said he thought he was on the side track, when asked why he did not get out of the way. He had plenty of time to have gotten off of the track after the whistle was blown; he must have known the train was coming. The track is almost straight for half a mile at Lenoir, and the engineer could have seen a man on the track for some distance. The whistle was blown three or four times and. the engineer used the air and jams and reversed the engine before plaintiff was struck."

E. O. Morris testified by deposition, for defendant; as follows: "At. the time plaintiff, John Herrin, was injured I was express messenger for Adams Express Company, and was present on defendant's train as such express messenger. Lenoir is not a regular stopping place, but is a flag. station. The accident occurred about 25 or 50 feet from the platform.. The first time I saw plaintiff he was going south on the track, and continued southward until he was struck. In my opinion the train was going. eight miles an hour, and perhaps not so fast. In ran about 75 feet after striking plaintiff before it stopped. I assisted in helping plaintiff on the train after he was hurt. He stated to me that he saw the train, but. thought he could make it to the platform before the train reached him."

C. A. Hubbard, witness for defendant, testified: "I was baggageman in employ of defendant, and was present when plaintiff was injured. The accident occurred about 8 o'clock in the morning. Lenoir is a flag station, and not a regular stopping place. When plaintiff was struck he was. about 75 or 100 feet north of the platform. My attention was first called to plaintiff from hearing the danger signals, and he was at that time 100. yards north of the platform, on the main track, running in front of the engine. The train was going at the rate of from three to five miles an. hour when plaintiff was struck, going 75 or 100 feet after striking him. He had ample time after the warning was given to have gotten off of the track. I am still in the employ of the defendant."

There is no question but what appellee was injured while walking on. the track, and in the absence of evidence showing that he had permission to be there, it must be held that he was trespassing upon appellant's track when injured, and therefore guilty of contributory negligence.

To avoid the effect of his own negligence, appellee contends, that " Where a person is upon a railway track, and is injured by a train upon said track, and even if the party was guilty of contributory negligence in remaining upon the track, yet the contributory negligence upon his part would not exonerate the railway company and debar the person from recovery, if by the exercise of reasonable care and prudence the railway company could have avoided the consequences of the person's negligence."

If it should be considered that a party under any state of case can recover for injuries received to which he contributed, appellee is not in a condition to avail himself of such a rule.

In treating of this subject, in Railway v. Smith, 52 Texas, 184, the Supreme Court says: " The rule of contributory negligence is based not so much upon considerations of what is just to the defendant as upon those of public policy, which require that every one should take a reasonable care of his own person and property; and upon the further principle, that when both parties are in fault, the law, as a general rule, will withhold its aid, and leave them to the consequences of their own wrong.

" If after the impending danger becomes known to the defendant, he should then fail to use such ordinary care as would have prevented the injury, and the same results as a consequence thereof, then another principle of law governs, and the defendant would be liable; and this liability would be increased, if under such circumstances the injury was inflicted willfully and wantonly, in a manner showing a reckless disregard of life or property.   Shearm. & Redf. on Neg., ch. 3, and authorities there cited in notes."

In the case of Railway v. Garcia, 75 Texas, 591, Mr. Stayton, Chief Justice, rendering the opinion for the court, says: " The effect of contributory negligence on a plaintiff's right to recover has been recognized in all the cases passed on by this court in which it was involved, and the rule fixing liability or denying it on the basis of comparative negligence has been condemned; but there may be expressions in some of the opinions from which it may be inferred that this court intended to hold, that notwithstanding the existence of contributory negligence on the part of a plaintiff, a defendant may be liable for a failure to use ordinary care.

" We do not understand such a ruling to have been intended in any of the cases involving injuries on railway tracks or elsewhere, but understand the rule to be, that contributory negligence on the part of a plaintiff defeats his action if based solely on negligence; but that in determining whether contributory negligence exists in a given case, the age, intelligence, and capacity of plaintiff must be looked to, as well as his act or omission at the time of the accident."

Again, in the case of Hughes v. Railway, 67 Texas, 595, where contributory negligence is discussed, and where " the uncontradicted evidence shows that the deceased was first seen sitting on the railway track, about

fifty feet in advance of the locomotive which came in contact with him, and that so soon as seen effort was made to avoid the collision; but there is some evidence to the effect that a locomotive could be stopped in a less distance than that intervening between the deceased and the locomotive when he was first seen," Mr. Justice Stayton said: "A high degree of care is necessary on the part of a railway company in operating its trains or locomotives on any part of its road, and especially so in the streets of a town or city, though such streets may be in the suburbs and but little used; but if while so operating its road, one fully capable—physically and mentally—to take care of himself enters upon and remains upon its railway until he is injured by an approaching train or locomotive, which he might see and hear by the use of his senses, then it must be held that the contributory negligence of such a person will defeat a recovery by him, or by one who can recover only on such facts as the injured person could have recovered on had he not died through the injury received by him."

He further says: "There is nothing in the evidence tending to show that the deceased was not in mind and body sound, nor that he was wanting in any of the senses necessary to enable him to perceive and avoid danger, and the rule which denies a recovery to one whose contributory negligence brings about the injury complained of finds application."

In the last two cases the rule seems to be clearly stated, that one possessed of the ordinary faculties for perceiving and avoiding danger, who by contributory negligence brings about the injury complained of, can not recover damages therefor, and no qualification or exception to this rule is made therein.

The evidence in this case clearly shows that plaintiff was endowed with the ordinary faculties common to mankind, and could by the exercise of ordinary care have avoided the injury. In what character of case the rule laid down in Railway v. Smith, supra, that "if after the impending danger becomes known to the defendant he should then fail to use such ordinary care as would have prevented the injury," is applicable, we deem it unnecessary to discuss, as the evidence, in our opinion, fails to show the want of such ordinary care on the part of appellant. "The law presumes that a person walking upon a railroad track will leave the same in time to prevent injury from an approaching train of which he has knowledge, or should have by the ordinary use of the senses of hearing and seeing, and the managers of a train may act upon this presumption."

Giving to appellant the benefit of this presumption, there is not sufficient evidence upon which to base a judgment for appellee. There is no circumstance appearing from the record that was calculated to cause the engineer to believe, or warn him, that appellee was not going to leave the track in time to prevent being struck by the engine; and when he did realize it, it seems he did all he could to prevent injuring appellee. It is true appellee was seen by the engineer and fireman for some distance,

alternately running and walking ahead of the train, but from his conduct it was evident to said employes that he was aware of the approaching train, and was apparently in possession of his ordinary faculties, and it was not unreasonable for the engineer to presume that appellee would get off the track in time to prevent being hurt.

The facts all show that plaintiff contributed to his own injury, and there being nothing to show liability on the part of appellant, the judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered March 1, 1894.

Chief Justice LIGHTFOOT did not sit in this case.