CALVERT *v.* DETROIT UNITED RAILWAY.

1. PLEADING — GROSS NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DISCOVERED PERIL.

A declaration alleging that plaintiff's peril in attempting to cross defendant's street car tracks ahead of a car was discovered by defendant's agents in time to avert injury by proper action on their part, *held*, sufficient to support a judgment for plaintiff, notwithstanding her contributory negligence.

2. Negligence—Comparative Negligence.

    The doctrine of comparative negligence is not a part of the law of Michigan.

3. Same—Gross Negligence—Contributory Negligence — Proximate Cause.

    Although plaintiff by his negligent conduct may be put in peril of injury by defendant, if his peril is discovered by defendant, or if in the exercise of ordinary care it ought to have been discovered, a duty arises to avert the injury if it is reasonably possible to do so, and the failure to discharge such duty may be regarded as the proximate cause of the resulting injury.[1]

4. Same—Gross Negligence—Evidence—Question for Jury.

    Evidence as to the negligence of defendant's agents in failing to stop the car after plaintiff's peril was discovered by them, *held*, to present a question of fact for the jury.

5. Evidence—Opinion Evidence—Negligence—Gross Negligence —Harmless Error.

    In an action for personal injuries received in a collision between plaintiff's automobile and defendant's street car at a street crossing, testimony by a policeman who was riding in the front vestibule of the car at the time of the accident, that, in his opinion, with proper apparatus, the street car could have been stopped in 50 or 60 feet, should not have been received; but in view of the testimony of the motorman, based upon his own experience, that he could have stopped the car on the occasion in question in 50 feet, its admission was not reversible error.

Error to Wayne; Codd, J. Submitted April 23, 1918. (Docket No. 27.) Decided July 18, 1918.

Case by Belle Calvert against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*William G. Fitzpatrick*, of counsel), for appellant.

*Charles T. Wilkins* and *Edward R. Kehoe*, for appellee.

[1]See note in 21 L. R. A. (N. S.) 427.

The amended declaration of the plaintiff contains the following allegations:

"The plaintiff avers that, before defendant's said car struck plaintiff's said vehicle, as hereinafter set forth, plaintiff's said vehicle, in which plaintiff was then and there riding and driving as aforesaid, had then and there entered upon and started to cross said Porter street as aforesaid, and had passed the northerly line of the sidewalk on the southerly side of said Porter street and was approaching and about to enter upon and to cross said track of defendant's, and that when and before the front end of her said vehicle had passed said northerly line of said sidewalk said vehicle was in full view from the defendant's said car, and it was then and there plainly apparent to the defendant, through its servants and employees in charge of said car, if the defendant had kept or was keeping, as it was its duty to do, a careful or proper outlook, that plaintiff's said vehicle was then and there moving in a northerly direction and was entering upon and about to cross and crossing Porter street aforesaid and approaching and about to enter upon and to cross defendant's said track, and that plaintiff intended to cross said track and that plaintiff and her said vehicle were then and there in a situation of extreme peril of collision with defendant's said car and plaintiff in extreme peril of her life, and that such collision would result, unless defendant's said car was stopped before it reached Eighth street, and that plaintiff's said vehicle was so in full view from defendant's said car, and all these facts and plaintiff's said intention were so plainly apparent, as aforesaid, and were known to the defendant, and would and should have been so known if the defendant had kept or was keeping a careful or proper outlook while the defendant's said car was still some distance, to wit: 200 feet, east of Eighth street aforesaid, and in ample time for the defendant, through its said agents and employees, then and there to check said car and to bring the same under control and to stop the same before it reached Eighth street and to avoid collision with plaintiff and her said vehicle, and to avoid the injuries hereinafter set forth, and to allow the plaintiff and her said vehicle to cross said track in safety and to

escape from such perilous situation and to avoid collision with said car and the said injuries. But the plaintiff avers that both before and after said facts and her said situation of extreme peril were so apparent and so known to the defendant, and would and should have been so known if the defendant had kept or was keeping a proper outlook, the defendant then and there carelessly, recklessly and wilfully and with gross and wanton negligence failed to make any proper effort, or any effort whatsoever, to bring or keep its said car under proper control, or to check the same, or to stop the same, or to avoid collision with the plaintiff or with her said vehicle, and did not bring its said car under control or check the same, or stop the same, until after said car had struck the plaintiff's said vehicle, but then and there carelessly and recklessly and with gross and wanton negligence operated and drove its said car at a great speed against the said vehicle of the plaintiff so driven by the plaintiff and in which the plaintiff was then and there riding."

The question of fact submitted to the jury is indicated by these excerpts from the charge of the court:

"It is her claim and contention that after she had stopped her automobile and when it was proceeding in a northerly direction, it is her claim, that after she came into a place or position of peril upon the track, that is, in front of the car, that the car was a sufficient distance—that the street car was at a sufficient distance away so that the motorman in charge of the car could have, in the exercise of ordinary care, stopped his street car in time to avoid the collision that occurred, and that it was his duty to keep a proper lookout; but that this proper outlook was not kept and that after her situation of peril was discovered from the street car, if those in charge of the car had put the same under control, they could have avoided a collision, if a proper outlook had been kept; and that this negligent failure to bring the car under control, resulted in the accident; that it continued on its way at a rapid rate of speed and collided with the plaintiff's automobile causing the injuries complained of. That the collision could have been avoided by an

exercise of proper care on the part of those in charge of the car after her situation of peril and the danger of collision was apparent, and that the collision resulted from a lack of such care. * * *

"Therefore, the question resolves itself into a determination of the question of fact for you, Did or did not the defendant's agent, after this position of peril on the part of the plaintiff was or should have been discovered in the exercise of ordinary care, did he act with that ordinary care required by law? If you find that the plaintiff's dangerous position and situation was so apparent to the motorman in charge of the defendant's car, for a sufficient length of 'time to enable said motorman to stop his car and not run into the plaintiff, that said motorman instead of stopping the car negligently allowed the same to run and into the sides of the plaintiff while she was in a position as testified to, and injured her, then the defendant is liable in this case, even though you find that the plaintiff is guilty of negligence in putting herself into a position of peril in which she found herself."

Plaintiff, on the afternoon of July 24, 1913, going north on Eighth street, in Detroit, and crossing Porter street, drove her motor car upon the single track of defendant railway, where it was struck by a westbound street car. She was badly injured, a verdict in her favor for $3,500 being returned by a jury, upon which a judgment was subsequently entered. A new trial and a judgment *non obstante* was denied, the court saying, in answering the reasons assigned:

"There is but little question in my mind as to plaintiff's negligence in coming upon the track, and the jury were so instructed. A question of fact, however, arose as to 'whether the plaintiff was in a position of danger a sufficient length of time to have been seen by defendant's engineer' or motorman, and to have enabled him, after such discovery of the position of peril of plaintiff, in the exercise of reasonable care, to have stopped the car in time to have avoided the collision? This was a question of fact for the jury. Defendant's regular motorman testified that he could have, and

the testimony of himself and the police officer, coupled with some of the testimony of the student motorman himself, might well justify a jury in finding that in the moment of the discovery of this peril, the inexperienced operator lost his head. It is not an act of negligence, of course, to employ student motormen, but there can be no distinction as to the degree of duty to the public that is in law owing by the company in that their servants must use reasonable care and prudence in the operation of its cars, and the same measure is required of the novice as of the veteran. If the former fails, the responsibility is the company's.

"This case does not present any such situation that a ruling contrary to that urged by the defendant would at all vitiate the doctrine of contributory negligence as applicable to crossing cases, as is claimed by counsel. It simply presents the principles of subsequent or discovered negligence. The declaration, as amended, amply covers this phase, and the court submitted the cause to the jury solely upon that theory. Their finding of fact in that regard, I am not disposed to disturb. The motion therefore for judgment *non obstante veredicto* is denied.

"I do not believe that as a matter of law the verdict was excessive nor contrary to the weight of evidence, and a new trial is denied."

Plaintiff testified, in substance, that, arriving at Porter street, she stopped the car, the motor continuing to run, listened and looked. A building on the corner obstructed her view to the east, she being, when the car was stopped, a little south of a line parallel with the front of the building. She sat on the right hand side of the car. The head of the car projected about five feet farther north. She could see a building on the north side of Porter about 190 feet east of the east curb line of Eighth street. Seeing no car and hearing none (she was very familiar with the neighborhood), she started her car in low speed, looked west to see if there was traffic coming from that direction,—

"and by that time my front wheel was to the south rail of the track and my sister screamed and also a man hollered and I glanced and saw the car. It seemed to be shooting as if out of a gun. It was going so fast that I could not get across, so I turned the wheel to go west and tried to have it hit me in the back instead of the side. I thought it would push me along instead of turning the machine over. That was my first thought, and I turned and fell on my head, and I don't remember any more until I was home on the couch.

"I had crossed Porter at Eighth street every day for a year and a half with an automobile. When I started up from my standing position I intended to go straight over the crossing and go home. I started on low speed. It went slowly, started up on low to go across, and when I started—when I seen the car I threw it into high, thinking that I could clear it before the car hit me, and in a second the thought came to me that I could not, so I turned the wheel, going west on high speed."

Upon cross-examination she testified that she looked to the east three times, once when her car was at rest, again after she had started on, but where she was with reference to the front of the store she does not state, a third time when she says the car was "more than a car length away."

Porter street is 60 feet wide between lot lines and 28 feet from curb to curb. The street car track is in the center of the street. It is 11½ feet from the south curb to the south rail of defendant's track. It is 12 feet from the curb on Eighth street to the lot lines, and the street is 26 feet wide between curbs. There are sidewalks on the south side of Porter and east side of Eighth street. The store building at the southeast corner of the intersection of the streets which obstructed the vision looking east was built with its front and west walls flush with the inner edges of the walks. It is 408 feet from the center of Eighth street to the center of Brooklyn avenue; meas-

ured by property lines, the blocks are 350 feet long. If she had looked to the east after her body had passed beyond the curb, she could have seen a long distance. Obviously, she must have driven her car some distance before the hood showed beyond the curb line, and obviously she did not look for a car from a position where she could see one at any considerable distance before going upon the track. The street car was about 30 feet long. It had stopped at Brooklyn avenue, one square east of Eighth street, and after starting attained a speed of 25 miles an hour. Plaintiff's witness Donnelly, a policeman, boarded the car at Brooklyn avenue, and stood in the front vestibule. He says he saw plaintiff's car moving when the front wheels were about even with the south curb line of Porter street, and when the street car was about 90 feet east of Eighth street.

"There were two ladies in the automobile. It was a two-passenger roadster. I noticed the driver of the automobile when it got close to the track, swing or try to go to the west, in the same direction the car was going. It didn't turn quickly enough to avoid the collision with the street car. The speed of the street car didn't slacken up when it struck the automobile. It struck and skidded the automobile ahead between 75 or 100 feet west of Eighth street. When the automobile was struck it was about in the middle of Eighth street. The automobile was struck almost in the center. The automobile, after the car stopped, was right square across the track, and the front end of the street car was right up against it. The front of the automobile was facing north. * * * I have already told you that they were out completely from behind the north wall of the building. If they looked from that position there was nothing to prevent them from seeing down to Brooklyn avenue as far as the eye would carry. When they got out they could look down straight. I can't say if the automobile slackened its speed before it was struck. I could not see any increase or decrease. I saw them turn when the

car got over the track; they tried to go to the west.
When I was looking at the automobile it was moving
at right angles to the street car. I didn't have an
opportunity to observe the speed at which the auto-
mobile was going."

After some preliminary questions and answers de-
signed to show his competency to answer the question,
which counsel for defendant say, and said, not only
did not show competency but established incompeten-
cy, he testified, over objection, that in his opinion
the street car, loaded as it was, on that day and occa-
sion, with proper apparatus in proper order, could
have been stopped in 50 or 60 feet. This testimony,
upon suggestion of plaintiff's counsel, was afterwards
stricken out.

Plaintiff called the witness Warren, a former em-
ployee of defendant, who was a motorman, and in
the vestibule of the car upon the day in question. He
testified that he saw the automobile when it was 9
or 10 feet south of the track. When he saw the posi-
tion of the automobile and the peril of a collision was
realized, the street car was about 50 feet east of the
east curb of Eighth street. And he testified further,
over objection, that the car could have been stopped
(an emergency stop) and that he could have stopped
it, that day, under existing conditions, in 50 feet. This
witness finally stopped the car, taking the controller
from the student motorman, but not until the colli-
sion had occurred, before which time the street car
did not perceptibly slacken its speed.

Defendant called the witness Hawthorne, who was
the motorman driving the car—a student motorman,
then under the instruction of the witness Warren.
He saw the automobile moving north when the street
car was about 40 or 50 feet east of the center of
Eighth street.

"When I saw the automobile in that position I shut

off the current. I supposed I was shutting it off, and I applied the air at the same time, and reached for my reverse. I shut it off. My power was not shut off. It locked my reverse so that I could not reverse. Then I reached and shut off the power and then the reverse could be used. After the power was shut off the car stopped. I had failed to shut off my power probably half an inch, but it was enough to leave the power on, and the effect of that so far as trying to put on the reverse, was that it locked the levers, and it was not possible to use the reverse. The collision occurred a little west of the center of Eighth street. After I hit the automobile I shoved it until the power was shut off, probably 14 or 15 feet, maybe more, probably. The car stopped when the regular motorman shut off the power. It went 14 to 15 feet or probably more after it struck. I don't think any part of the automobile got on the fender. I don't remember."

Appellant's contentions are (1) that the declaration not presenting a case of subsequent negligence, and the court being of opinion that the plaintiff was guilty of precedent negligence, the request of the defendant for a directed verdict upon this ground should have been granted, (2) assuming the declaration to be sufficient, the testimony does not present a case of subsequent negligence—discovered negligence—upon the part of the defendant, (3) the opinion of the witness Donnelly concerning the distance within which the street car could have been stopped should not have been received and striking it out did not cure the error. It is not contended here that the verdict is against the weight of evidence.

OSTRANDER, C. J. (*after stating the facts*). **1.** The amended declaration, its language being fairly interpreted, alleges peril of plaintiff, discovered by defendant's agents in time to avert injury by proper action on their part. It must be held to be sufficient.

2. The principal, and the interesting, question, upon the merits, is whether the testimony presents the case alleged in the declaration. The doctrine of comparative negligence is not a part of the law of this State. It is the law of this State that when plaintiff is guilty of negligence contributing to the injury he can recover no damages for the injury. In the application of this doctrine there is involved the negligence of the defendant which is complained of, causing or helping to cause injury, and the negligence of plaintiff contributing thereto. It is also the law of this State that although plaintiff by his negligent conduct may be put in peril of injury by defendant, if his peril is discovered by defendant, or if in the exercise of ordinary care it ought to have been discovered, a duty arises to avert the injury, if it is reasonably possible to do so, the failure to discharge which duty may be regarded as the proximate cause of the resulting injury. It is said by counsel for appellant:

"Assuming, which perhaps more nearly approximates the theory of the plaintiff's amended declaration, that the motorman is to be held to have anticipated the plaintiff's attempt to make the crossing ahead of his car regardless of the danger to herself involved therein; that she was not intending, as she should have intended, to stop before reaching the track, although it was easily possible for her to do so instantly, and that the peril of her situation was to be deduced from this course of reasoning, then it only needs to be said, no matter what the negligence of the defendant, the plaintiff, by continuing in motion towards the track upon which the car was approaching at a terrific rate of speed, by not reassuring herself of the safety of that attempt just before entering the track or before she got so close thereto that it would be impossible for her to stop if necessary, by failing to stop and allowing the car to go by, as was her duty, was guilty of continuing and continuous acts of negligence which ultimately brought her directly into the

path of the car and to her injury, in which case, call the negligence of the defendant what you will—ordinary, precedent, gross, subsequent or what not—the active negligence of the plaintiff operating in conjunction and concurrently therewith in any view of the law as announced in every jurisdiction, precludes the possibility of her recovery."

It is further said, in argument:

"This is not the case of a person using the part of the street occupied by the tracks as a thoroughfare while proceeding on his way ahead of and in the same direction the car is going and being run down by a motorman. It is a case of an unexpected and admittedly imprudent attempt (at least in its initiation) to cross the street car track at right angles. Subtle refinement and clever hair splitting will not serve permanently to deter the courts from applying the familiar rules of law to such situations. If a case of subsequent negligence is made for the jury in the case at bar, then we have, willy nilly, frittered away the doctrine of contributory negligence in right angle street car crossing cases; since in every case where an attempt is made to cross ahead of a street car the question of whether there was a timely discovery of the situation will turn upon whether a motorman could have stopped his car after the attempt was made, and it would follow that if he could, his negligence will authorize a recovery notwithstanding the contributory negligence of the plaintiff. With such a rule, there could no longer be any such thing as contributory negligence defeating a recovery in any case where the defendant's negligence consists of failing to control the car."

I think that counsel has precisely stated the theory of plaintiff, the effect of the testimony of plaintiff's witnesses. The witness Donnelly and the regular and the student motorman, each professes to have become aware, before plaintiff's car had actually gone upon the rail, that she would drive it there and that unless the street car was stopped, or its speed greatly les-

sened, there would be a collision.   Neither of them
professes to have believed that plaintiff's actions in-
dicated knowledge of the approach of the street car
or that she would stop her car before attempting to
·cross the rails.   On the contrary, from about the time
· her car was seen, an effort was made to avert a dis-
aster which *seemed* to be imminent, to perform a duty
then arising out of circumstances as they appeared.
There was, at least, testimony tending to prove this.
It is true that her negligent conduct continued—was
continuous—almost from the time she started her car
(because she did not from a proper position look for
the street car, as she ought to have done, and she pro-
posed, she testified, to drive on across Porter street)
until she discovered her peril, when she made some
effort to avert disaster.   It is also true, if the testi-
mony of the witnesses referred to is believed, that
her negligent conduct and apparent peril were discov-
ered by defendant's servants at some time before the
street car reached Eighth street.

The remainder of the quoted argument for appel-
lant contains the reasoning of this court in the opinion
delivered in the case of *Fritz* v. *Railway Co.*, 105
Mich. 50, 54, 55.   In that case the driver of a milk
wagon directly ahead of a moving street car which
he had not observed suddenly turned ·his horses to
cross the track. .It was "an attempt to cross the track,
unexpected and sudden."   And it was said:

"If we assume that, under these circumstances, the
plaintiff had by this act placed himself in a position
where his negligence might have been discovered and
the car brought under control, it will result that, in
every case where an attempt to cross ahead of a street
car is made, the question of whether there was a
timely discovery of the situation will turn upon wheth-
er the motorman could have stopped his car after the
attempt was made, and it would follow that, if he
could, his negligence will authorize a recovery, not-
withstanding the contributory negligence of plaintiff."

In *Labarge* v. *Railroad Co.*, 134 Mich. 139, it was said:

"It may be conceded that, where one wilfully injures another, the doctrine of contributory negligence is not involved, because the injury is not *negligent*, but *intentional.* Again, where one is seen in danger, though placed there through his own negligence, one who, thus seeing him, omits ordinary care to avert an injury to him, is not alone negligent, but is *wanton*, and, as wantonness of this kind is akin to wilfulness, there is an opportunity for applying the same rule, and defendants have been held liable under such circumstances. And again, we can conceive of a degree of recklessness which, by reason of its coincidence with *probable disaster*, is closely allied to the foregoing, and should perhaps be governed by the same rule; but it does not follow that all acts that counsel or jurors might, in the light of subsequent events, be inclined to call reckless, should be treated as something more than negligence, and classed with intentional, rather than with negligent, acts, when it cannot be said that it was coincident with a probable disaster."

A reference to decisions is made, and it is said:

"In all of these cases the negligence of the defendants occurred when there was a condition of danger, and it may be said that it was unimportant how such antecedent condition arose, or whether it was due to the negligent act of the plaintiff or not. The defendant's wrong being a want of ordinary care, which care would have prevented the accident notwithstanding plaintiff's antecedent negligence, it was responsible for it, and plaintiff's antecedent negligence being at most a remote cause, and there being no other negligence on the part of the plaintiff, he might recover. It has in some cases been said that his negligence might be said to be a remote, and not the proximate, cause.

"We have held that a defendant who backs its cars at high speed across a highway in a city or village, without having a brakeman upon or in charge of the same, is chargeable with gross, *i. e.*, great, negligence,

and cannot maintain the defense of contributory negligence, where the presence of such brakeman, and the use of ordinary care, would have shown plaintiff's danger, and made it possible to avert the accident. This rule is subject to the exception of such negligence on the part of the plaintiff as occurs after his discovery of the danger. In our opinion, the term 'gross,' as applied to negligence, has no such broad legal effect as is contended for in this case; but whenever the defendant sees a plaintiff in danger, or by exercising only ordinary care in the discharge of his duty should discover such danger, in time to avert an injury, and either fails, after discovering it, to take steps to avert it, or fails to discover the danger, the fact that the plaintiff's danger arose, in the first place, through his own negligence, does not prevent his recovery for an injury sustained. * * *

"The doctrine of responsibility, notwithstanding discovered negligence of the plaintiff, does not apply where the plaintiff's negligence is, in the order of causation, either subsequent to, or concurrent with, that of the defendant. *Smith* v. *Railroad Co.*, 114 N. C. 728 (19 S. E. 863, 923, 25 L. R. A. 287) ; *Holmes* v. *Railway Co.*, 97 Cal. 161 (31 Pac. 834). Thus it it said that while one discovered by an engineer, negligently walking on a railroad, may be entitled to recover, if the engineer, apprehending the danger, makes no effort to avert it. He cannot recover if, after becoming aware of the danger, he makes no proper effort to escape. *International, etc., R. Co.* v. *Garcia*, 75 Tex. 583 (13 S. W. 223) ; *Louisville, etc., R. Co.* v. *Webb*, 90 Ala. 185 (8 South. 518, 11 L. R. A. 674) ; *Smith* v. *Railroad Co.*, *supra*. And in *Ochsenbein* v. *Shapley*, 85 N. Y. 214, this was held as to one who, after notice that a boiler is to be tested in a reckless manner, persists in standing by until it explodes."

In *Fike* v. *Railroad Co.*, 174 Mich. 167, the trial court, in instructing the jury, said, p. 202:

"Even though you may believe from the evidence that the plaintiff or Charles Fike was guilty of negligence (in driving with a team upon a railroad track, where defendant's train ran them down) yet if you further believe that such negligence of both the plain-

tiff and Charles Fike ceased before the negligence of the defendant began, and did not again occur before or at the time of the collision, then the jury should find for the plaintiff."

This court had no occasion to approve or disapprove this instruction, it being favorable to defendant. But,, assuming that it is a correct statement of applicable law, no violence is done to any established rule of the law of negligence when it is held that upon the peculiar facts disclosed by this record, namely, the admitted discovery of plaintiff's peril by the agents of defendant, it became the duty of those agents to seek to avert the threatened collision, neglect or refusal to perform the duty being subsequent negligence.

There is no evidence of wanton or wicked conduct of defendant's agents after discovering the peril of plaintiff. Quite the contrary is proven. It may be said, as matter of law, that there was no negligence in discovering — apprehending — plaintiff's peril. If they were negligent, it was in not sooner bringing the street car to a stop. The humanitarian doctrine invoked by plaintiff is available to her only when it appears that the operator of the car could have stopped it before it reached the Eighth street crossing. According to the testimony, the street car was about 30 feet in length and was moving, when plaintiff's movements were discovered, at the rate of 25 miles an hour. This is more than a car's length each second. Assuming, and the assumption is favorable to the plaintiff, that instant action should have begun when the car was 90 feet from the crossing point, about three seconds of time elapsed between the discovery of the peril and the collision. Assuming, as I think the rule requires us to do, basing negligent conduct upon the discovery of peril by the student motorman, that the car was less than 90 feet away, the elapsed time is proportionally

diminished. The student motorman, in charge of the devices employed in stopping the car, in his anxiety mismanaged them, or did not manage them at all. The instructor motorman acted promptly when the situation was discovered by him. The testimony concerning what was done to stop the car was before the jury and it cannot be said, as matter of law, that it did not present for them an issue of fact.

The testimony of the policeman (his opinion) should not have been received, but, in view of the testimony of the motorman, based upon his own experience, and not a mere expression of opinion, it should not be held that admitting it was reversible error.

The judgment must be affirmed.

BIRD, MOORE, STEERE, BROOKE, and STONE, JJ., concurred with OSTRANDER, C. J. KUHN and FELLOWS, JJ., concurred in the result.