### Schofield v. Chicago, M. & St. P. Ry. Co.

*(Circuit Court, D. Minnesota. June, 1881.)*

**1. Contributory Negligence.**

Where the plaintiff's injury is occasioned in part by his own negligence, he cannot recover though the defendant is in fault also.

**2. Same—Railroads—Crossings—Nonsuit.**

The crossing, where the injury complained of in this action occurred, was one with which the plaintiff was familiar and one which he had often passed. Above it was the usual sign to "Look out for the cars," printed in large letters, and at that place the highway and railroad were nearly on a level. Away from it, at a distance of 20 rods in the direction from which the train in question came, was the depot nearest it in that direction. This stretch of track was in full view of the plaintiff while still 600 feet from the crossing, and at 33 feet from such crossing one could see a distance of some 20 rods beyond the depot. If, at any time after the train passed the depot, the plaintiff had looked in that direction he would have seen it; and, if not then too near the train for escape, by stopping his horse he could have avoided the accident. On a motion to nonsuit, *held*, that these facts show contributory negligence on the part of the plaintiff, though the train was not a regular one, and no train was due at the time; though it was moving at an unusual and dangerous rate of speed; though it did not stop at the depot as trains usually but not always do; and though no warning was given of its approach, by blowing the whistle or ringing the bell, after such depot was passed.

McCrary, C. J. The plaintiff having closed his evidence, the defendant moves the court to instruct the jury to find for defendant upon the ground that the plaintiff, by his own showing, was guilty of negligence which contributed to the action by which he was injured. It is now settled law, so far as the federal courts are concerned, that if, upon the evidence the court would set aside a verdict against the party, if rendered, *it is its duty to charge the jury not to return such a verdict;* citing 21 Wall. 119; 14 Wall. 442; 95 U. S. 697.

This rule devolves upon the court, upon this motion, the duty of determining whether, upon the evidence as it stands, a verdict for plaintiff could be upheld. The question is not whether upon the facts, in the opinion of the court, such a verdict ought to be rendered; if the court were to assume that to be the question it would usurp the province of the jury. The question is whether, if a verdict were ren-

dered for plaintiff upon his evidence now in, the court would set it aside upon motion as being contrary to the evidence; and it is to be judged by the same rules that would prevail upon the consideration of such a motion after verdict. Let us inquire, then, whether, upon the evidence, the question of contributory negligence is fairly open for the consideration of the jury, and may be decided either way within their discretion. The undisputed facts upon which defendant bases this motion are the following:

(1) The plaintiff was familiar with the crossing; had often passed it, and the usual sign, printed in large letters over it, gave express warning to persons on the highway to "look out for the cars." (2) At the place of crossing, the highway and railroad are nearly on a level, and for a distance of at least 600 feet before reaching the crossing the plaintiff had a full view of the railroad from the depot to the crossing, a distance of 70 rods, and for a distance of about 33 feet, upon coming to the track, he could see beyond the depot, a distance of some 20 rods. (3) If at any time after the train passed the depot the plaintiff had looked in that direction he would have seen it, and if not then too near the train for escape, by stopping his horse he could have avoided the accident and injury. That these facts, standing alone, show contributory negligence on the part of plaintiff, is too plain to admit of doubt or argument.

But there is evidence tending to establish other facts, and these, for the purposes of this motion, must be taken as established. Being so regarded, the plaintiff claims that they authorize a verdict in his favor notwithstanding the facts and circumstances above enumerated. These latter facts are as follows:

(1) The train was not a regular one, and no train was due at the time of the accident. (2) The train was moving at an unusual and dangerous rate of speed. (3) The train did not stop at the depot as trains usually do, but not always. (4) There was no signal by blowing the whistle or ringing the bell after the train passed the depot.

Of course, these facts are not found, but they are assumed to be found for the purposes of this motion, because anything, if there is any testimony tending to establish it, must be taken as established upon a motion of this character. These facts, if established, would clearly show negligence on the part of the defendant, and I therefore assume, for the purposes of this motion, that such negligence is established. This however, does not of itself necessarily authorize a verdict for the plaintiff. If there was mutual fault—if both plaintiff and defendant were guilty of negligence—then, unless the defendant acted wantonly, there can be no recovery. Both parties were bound to exercise such care as under ordinary circumstances would avoid danger; such care

as men of common prudence would ordinarily use under the circumstances. The degree of care required in such cases depends upon the danger. As there is necessarily great danger in crossing a railroad track where trains are liable to pass at any time, great care is demanded alike of the engineer in charge of the locomotive and of the traveler upon the highway. Both have the right to pass, and their rights, duties, and obligations are mutual and reciprocal, and the same degree of care is required of each. The whole law of the case may be summed up in these words, taken from the opinion in the case of *Continental Improvement Co.* v. *Stead*, 95 U. S. 165: "Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty." If neither party keeps a careful lookout for danger, and an accident and injury ensue, there is no cause for action. Do the facts relied upon by plaintiff excuse him from the duty of looking out for danger by looking towards the depot for a coming train before driving onto the track? If not, do they show that by defendant's negligence the plaintiff was disabled from preventing the accident by ordinary prudence? It was a special and not a regular train. This fact may be considered as bearing upon the degree of care and caution required of plaintiff; but I am unable to hold that it excuses him from the duty of looking out for a coming train. It is common information that special trains are frequently run over all important lines of railroad, and no case has gone so far as to hold that a traveler crossing a railroad track is only bound to look out for regular trains in cases where there is nothing to obstruct the view.

I assume that the train was moving at an unusual and dangerous rate of speed. This, very clearly, did not relieve the plaintiff from the duty of looking out, but it presents the question whether he had time after he could have seen the train, by looking, to have avoided the accident by ordinary prudence. Of this I will speak hereafter. The train did not stop at the depot. The proof is that trains usually stopped there, but that they sometimes passed without stopping. This fact could only avail the plaintiff upon the theory that he heard the whistle announcing the approach of the train, and, supposing it would stop at the depot, did not look to see whether it did so or not; and I must say that I see no other theory on which the accident can be explained besides that. If such was the fact, the plaintiff was plainly negligent, for these reasons:

(1) He could not reasonably assume that the train would certainly stop at the depot, since that was not the invariable rule. (2) Being warned that a train was approaching, and thus put upon his guard, there was the most cogent reason for looking out, and it was heedlessness to neglect to do so.

A more difficult question is presented by the fact, which I assume is true, that no warning, by ringing the bell or blowing the whistle, was given of the approach of the train to the crossing.

Counsel for plaintiff insist that the neglect of the engineer to sound the whistle or ring the bell on nearing the crossing relieved the plaintiff from the necessity of looking for the coming train before attempting to cross, and he has cited some authorities to sustain this view. If this were an open question in the federal courts I should feel bound to consider it very carefully, as it is certainly one of importance, both to the railroad companies and the public. But in my judgment the question is settled adversely to the plaintiff by the decisions of the supreme court of the United States, by which I am, of course, bound. In the case of the *Continental Improvement Co.* v. *Stead, supra,* the supreme court say:

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentive to caution, for their lives are in imminent danger if a collision happens; and hence it will not be presumed without evidence that they do not exercise proper care in a particular case. But, notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them; such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortunes."

In the case of the *Railroad Co.* v. *Houston,* 95 U. S. 697, this precise question was considered. It is true that in that case the person killed was crossing the track a short distance away from the public crossing, (about 70 feet from the public crossing, as the court find,) but it was conceded in the case that she was crossing on the public highway, and so the court considered the case in both aspects, and they distinctly say, assuming that she was not crossing on a highway, that the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from taking ordinary precautions for her safety. And the court further say that "negligence of the company's employes in these particulars"—that is, in regard to the sounding of the whistle or the ringing of the bell—

"Was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger. Had she used her senses she could not have failed both to hear and to see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass; and was injured, the consequences of her mistake and temerity cannot be cast upon the defendants."

Upon the authority of these cases I am bound to hold that the failure of the engineer to give the customary signals of the approach of the train did not relieve the plaintiff from the duty of looking back at least as far as the depot before going upon the track. This brings me to the only remaining question in the case: Was the velocity of the train so great that if the plaintiff had used ordinary care and caution he would have been unable to prevent the accident? Ordinary prudence required the plaintiff to look for a coming train before proceeding so near the track as to be unable to prevent a collision. If one drives his horse so near the track as to be in danger from a passing train, he cannot excuse himself upon the ground that he was unable, after looking, to escape unhurt. He must look out in time to avoid a train, if one is approaching, provided always that there is a clear view, so that he is not deprived of the means of looking. But it is said that he could not see the approaching train beyond the depot, unless he looked at a distance of 32 feet from the crossing. This is true; but the distance to the depot was 70 rods, and, even if the train was moving at the extraordinary speed of 50 miles an hour, it must have passed the depot when the plaintiff was at least 100 feet from the crossing. While a train running at 50 miles an hour is traveling 70 rods, a horse, even if walking, would travel at least 100 feet. It is highly improbable either that the train was moving at that speed, or that the horse, on a severely cold day, would move at a slow pace. But, giving the plaintiff the benefit of every doubt, it remains manifestly true that the plaintiff, when within 100 feet of the crossing, might have seen the train coming from the depot, and might have avoided the accident by stopping until it passed by.

It is of the utmost importance that the rules of law governing this question of negligence on the part of employes of railroads, as well as on the part of the traveling public, should be thoroughly understood and rigidly enforced. Railroads are being rapidly constructed in

every direction; they necessarily intersect the common highways at numerous points. The rules of law to which I have referred, requiring equal care and caution on the part of those who run railroad trains and those who travel the highways, if obeyed, will prevent accidents. We must hold all parties to its strict observance. Because this, in my judgment, is a case in which those rules were disregarded by the plaintiff, I am constrained to hold that he cannot recover, and therefore sustain the pending motion. I am the better satisfied with this ruling, because the case would, I presume, go to the supreme court, and upon the record thus made up the plaintiff can take exceptions, and have the questions upon which he relies fully and fairly presented to that tribunal.