CHICAGO R. I. & P. RY. CO. vs. POUNDS.

Opinion delivered March 7, 1896.

1. *Accident at Railroad Crossing—Evidence—Instruction.*
    Appellee brought his action against defendant railroad company for injuries received at a crossing. On the trial, he testified

that as he started to cross the track, he looked in both directions and could see no train; that the wind was blowing and a cloud of dust filled the air; that he was deaf. Other witnesses testified that the train was 500 feet from the crossing when plaintiff started across the track; that a person could see down the track in the direction from which the train was coming 400 or 500 yards; that the engineer saw plaintiff approaching the crossing when the train was about one half mile from the crossing; that he blew the whistle; that plaintiff did not look one way or the other; that he applied all of the breaks when he saw plaintiff was not going to stop; that the train was running about eighteen miles an hour. Other testimony showed that the train checked up when the engineer saw plaintiff, but when about 300 feet from the crossing, put on extra steam. Other testimony conflicted with this. *Held*, The trial court did not err in refusing to direct a verdict for defendant. SPRINGER, C. J. dissents.

2. *Remarks of Counsel—Not Error.*

In his argument, counsel for the plaintiff used the following words: "It is a well known fact that railroads use every means in their power to win their cases, and defendant's witnesses in this case have testified under the constant fear that their further employment depends upon their testifying as the railroad dictated." *Held*, These expressions were reprehensible, and should have been rebuked by the court, yet, the refusal of the court to take it from the jury is not reversible error.

3. *Instruction.*

The court properly refused to instruct the jury that if defendant's station agent was negligent in not trying to prevent plaintiff from going on the track, that fact could not be considered as evidence of defendant's negligence, unless it further appeared that it was part of the duty of such agent to perform such act. The conduct of the agent was in no way claimed as basis of recovery.

4. *Contributory Negligence—Burden of Proof.*

In personal injury cases the burden of proof to show contributory negligence is on defendant.

Appeal from the United States Court for the Southern district of the Indian Territory.

C. B. KILGORE, Judge.

Action by C. S. Pounds against the Chicago, Rock Island and Pacific Railway Company to recover damages for personal injuries received at a railroad crossing at the town of Marlow, Indian Territory. There was judgment for plaintiff, and defendant appealed. Affirmed.

*M. A. Low, W. F. Evans* and *J. E. Dolman,* for appellant.

1. Trainmen are not required to anticipate that a person about to cross a railroad track would not look for the approach of a train. Railroad Co. vs. Walker, (Ind.) 15 N. E. 234. And it is no part of the duties of a station agent to warn travellers of an approaching train. Aldrich vs. Railroad Co., 100 Mass. 31.

2. It is universally held that a railroad crossing is a place of danger—that it is a constant warning of danger—and when a traveller approaches a crossing, it is his plain duty to proceed with caution. He must assume that there is danger and act with ordinary prudence and circumspection upon that assumption. Railroad Co. vs. Mosely, 57 Fed. 921; Beach on Contributory Negligence § 63; Salter vs. Railroad Co., 75 N. Y. 273; L. S. & M. S. R. R. Co. vs. Miller, 25 Mich. 274; Beyel vs. Railroad Co., 12 S. E. 532; Glasscock vs. Railroad Co., 14 Pac. 518; R. R. Co. vs. Hedges, 20 N. E. 530; R. R. Co. vs. Elliott, 28 Ohio St. 340; Marland vs. R. R. Co., 123 Pa. St. 487; R. R. Co. vs. Houston, 95 U. S. 697; Schofield vs. R. R. Co. 2 McCrary 268; S. C. 114 U. S. 615; Arts vs. R. R. Co., 34 Iowa, 153; Hayden vs. R. R. Co. 28 S. W. 74; Kelsey vs. R. R. Co., 30 S. W. 339; R. R. Co. vs. Butler, 103 Ind. 31; McCrary vs. R. R. Co. 31 Fed. 531; R.

R. Co. vs. Duncan, 42 S. E. 37; Dunning vs. Bond, 38 Fed. 813; Littaur vs. R. R. Co., 61 Fed, 591; Blount vs. R, R. Co. 61 Fed. 375.

3. The deafness of appellee cast upon him an obligation to look for an approaching train more carefully than he otherwise would. I. & G. N. R. R. Co. vs. Garcia, 75 Tex. 583; Reynolds vs. R. R. Co. 69 Fed. 808; R. R. Co. vs. Mosely, 57 Fed. 921.

4. The burden of proof was on the plaintiff below to clear himself of the charge of contributory negligence, and not on the railroad company to prove that he was guilty of contributory neglience. Ry. Co. vs. Spickler, 61 Tex. 427. When contributory negligence is established by the undisputed evidence, it is the duty of the trial court to instruct the jury that the plaintiff cannot recover. Ry. Co. vs. Scott, 27 S. W. 827; Ry. Co. vs. Whitacre, 35 O. S. 627; Beach on Contributory Negligence § 157.

*A. C. Cruce,* for appellee.

No brief is on file for appellee.

The opinion states the facts.

LEWIS, J.    In this class of cases the law is well settled. "The obligations, rights, and duties of railroads and travelers upon highways crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other; for conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is

*Duty of railroad company and traveler crossing track reciprocal.*

based upon this condition. Both parties are charged with a mutual duty of keeping a careful lookout for danger; and the care or diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty." Improvement Co. vs. Stead, 95 U. S. 161; Railroad Co. vs. McClurg, 8 C. C. A. 322, 59 Fed. 860; Railway Co. vs. Smith (Tex. Sup.) 28 S. W. 520. The degree of danger varies at different railway crossings. Some may be comparatively safe, while others may be exceedingly dangerous. The amount of care to be exercised by the railway company or the traveler upon the highway must be graded to suit the exigencies of the particular case. It is held with practical uniformity that a traveler upon a highway approaching a railway crossing falls short of the standard of prudence which the law has fixed, if he fail, before going on the track, to make a vigilant use of his senses of sight and hearing. Failure to look or listen for the approaching train will ordinarily preclude him from recovering. If his view should be obstructed, he must more vigilantly exercise his sense of hearing. If his hearing be impaired, he must exercise greater care in the use of the faculty of sight. Of recent years, a qualification upon the doctrine of contributory negligence as a bar to a recovery has grown up and become firmly rooted in the law. It is that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequence of the injured party's negligence, after perceiving the danger to which such negligence had exposed him. Railway Co. vs. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Coasting Co. vs. Tolson, 139 U. S. 551; 11 Sup. Ct. 653. Thus it has been said; "But there are cases in which a plaintiff who is chargeable with concurring negligence may still recover. If, for example, the servants of a railway company discover a tresspasser

*Contributory negligence will not defeat right of recovery, when.*

upon the track, they must use all reasonable precaution to avoid injuring him; and it may be, also, that where it is their duty to keep a lookout for persons upon the track, and where, if this duty, to keep a lookout had been performed, one passing along it would have been discovered in time to have warned him, or to have stopped the train, and this duty had not been performed, and the trespasser had been run over and injured, the company will be liable to respond in damages. The negligence or trespass of a person does not place him beyond the protection of the law, and does not excuse another for failure to exercise care to avoid injuring him; much less does it justify a willful injury. In such a case, although the negligence of the plaintiff, in one sense, at least, contributed to the injury, the negligence of the defendant intervenes between the plaintiff's negligence, and the result, and becomes the proximate cause of the injury. As some of the authorities put it, the plaintiff's negligence, in such case, becomes the condition, and not the efficient cause, of the accident." McDonald vs. Railroad Co. (Tex. Sup. ) 22 S. W. 944; Whit. Neg. § 381; Hays vs. Railway Co., 70 Tex. 602, 8 S. W. 491; Staus vs. Railroad Co. 75 Mo. 185.

Having in view these well-established rules of law, consideration is given to the first point urged by appellant, —that the trial court erred in refusing to instruct the jury at the close of all the evidence to return a verdict for the defendant. Gleaning from the record the facts most favorable to the appellee, and also enough to manifest what is conflicting or inconsistent in the testimony of the appellant, the following appears: Appellee testifies that on the occasion of the injury he was in his wagon, driving north in the dirt road parallel to defendant's track, in the town of Marlow; that he could see no train from the north; that when he got to where the road runs across the track, he turned his head back to the south, and could only see to where the railroad fence crossed the track; that the wind

was blowing mighty hard from the south, and the dust was almost like a cloud; that that was as far south as he could see; that he could see no train coming from that direction, and was entirely unconcerned; that he didn't think he was over 20 feet from the main track, when he turned and looked down south for the train; that he had been deaf 30 years; had lived at Marlow four years, right close to the railroad track, some 300 or 350 yards from where he was struck, and always used the crossing at that place in going to town, some two or three times a day. S. H. Riley testifies for appellee: That he saw the cars when they struck appellee. That when struck, the fore wheels of his wagon had crossed the main track, and the rear wheels were about the middle of the track. That the track runs north and south, and the dirt road right along side of it. That appellee was coming from the south, traveling north, until he came to turn and go west and cross the track. That from where the road turned west to center of track would be about 30 feet. That a person could see from where the road turns, down the railroad track, south, 400 or 500 yards. That the fence crossing the track is in the neighborhood of 300 yards from the crossing. That he first saw the train something like 400 yards from the crossing. That he saw appellee before he saw the train. That appellee was crossing the switch track from that onto the main track, aiming to cross over the west switch. That the train was coming rapidly, and saw appellee, and whistled and checked up, and just about 300 feet from where it checked up it put on extra power and steam, and pushed on by. "Q. Did you see him put on extra power of steam? A. I saw it with my own eyes. I saw the increased rate of speed. I saw the extra speed of the train." That the train stopped somewhere in the neighborhood of 400 yards north of the depot. That the train was running 30 or 35 miles an hour from where he could see. That he was 150 yards west of the crossing when the colli-

sion occured. That when he saw the train first appellee was on the main track. When he first saw appellee, he was coming across the east side track, coming to the crossing. That he was crossing the side track when witness first saw the train. That he should judge that there is about 15 feet between the east side track and the main track. That there were some cars standing on the west switch, with a small opening for wagons to pass through. That appellee's horses were on the main track endeavoring to cross to the west switch, and seemed to stop their speed in going across—seemed to be frightened at the cars in front, That the opening was some twelve or fifteen feet, and that there was no engine with those cars. Williams testifies for appellee that he was in a wagon, driving along, 10 or 15 feet behind him, on the occasion of the injury; that when he first saw the engine it looked to be about 300 yards or a little more south of the crossing; that at this time appellee's horses were mostly over the east side switch; that his wagon was on it; that witness knew; that he was right behind appellee, with a wagon and team; that the train was running tolerable fast; that there were some cars standing on the west switch; that the train slacked up when he saw it; that he thought he would go across, and appellee's team kind of shied, and he did not follow him any further, but backed back; that he could not say whether the train got faster after it slacked up; that his horses were restless some; that that was the reason he wanted to get across. J. P. Becktol testifies for defendant that he was station agent for defendant at Winola, Iowa. On cross-examination, that the train was close to half a mile from crossing when he first saw it; that it sounded the whistle at this point; that he came into the station room, and saw plaintiff about 175 feet from where the road turns in to cross the track; that the train was slacked up when at least a quarter of a mile from the crossing; that when the train slacked appellee was just turning in on the

east side track, if witness recollected right; that they must have checked up by reason of the old man on the crossing; that they must have discovered him there; that at the time they were about a quarter of a mile from him when they slacked; that they reduced the speed; thought it was between the rate of 15 and 18 miles an hour when they struck him; when he first saw the train it was running 25, possibly 30, miles an hour; that the engineer could have seen down the track a mile and a half from the east switch, and could have seen appellee when he first turned from the road to go across; that a full train of air brakes can be stopped in a short distance; that this train went from one-eight to a quarter of a mile before it stopped. On redirect examination, that when the old man was within 50 or 75 feet from the main crossing the train was about a quarter of a mile south of the crossing. Adams testified for appellant that he was riding in the engine when appellee was hurt; that when the train got within a half mile from the station he saw appellee driving along the road, 150 yards from where the road turns; that at this time the train was running 30 miles an hour; that when appelle arrived at the turn the train was 250 to 300 yards from the crossing; that at this time the engineer blew his whistle and stock alarm; that appellee did not look one way or another; that the train was about 50 yards from the crossing when the plaintiff's horses were just going upon the east passing track; that with the train running 18 miles an hour, appellee was just going upon the east passing track, and he got almost over the main track before the train traveled 150 feet; think the caboose was right even with the depot platform when the train stopped. Clark testifies for defendant: That he was the engineer in charge of the engine. That he was going about 25 or 30 miles an hour when he blew the whistle first, about half a mile from the crossing. That he run on to within 600 feet of the crossing at this rate of speed. That when

appellee turned to cross he sounded the stock alarm. That he saw nothing before that to indicate that he would not stop. That after sounding the stock alarm, he applied to air brakes, and also the driver brakes. "Q. Did you do everything you could? A. Yes, sir. Q. Applied all the brakes you had? A. Yes, sir." That when about 600 feet from the crossing appellee was 60 or 70 feet therefrom. That he watched him until he came on the track. That witness was about 600 feet from the crossing when appellee got on the east switch. That he was coming over the east switch. That he did not tell the jury that when he got about 600 feet from the crossing aypellee was about 60 feet from the crossing. That when appellee's horses went upon the east switch witness was a little bit less 600 feet—about 500 feet—from the crossing. That the turn in the road is 60 or 70 feet from the crossing. That witness was only 500 feet from the crossing when appellee was just turning. That when he traveled that 60 or 70 feet to get on the east track, witness was, he should think, 300 or 400 feet from the crossing. That he was positive there was no wagon behind appellee; that he knew that appellee did not turn and look for train, because witness was looking right at him to see if his whistle had attracted his attention, and it did not do it. That he was about 600 feet from the crossing. That when the train stopped the caboose was 500 or 600 feet north of the depot. While two engineers testified, neither stated that the engine was reversed. Clark stated, in reply to a leading question, that he did everything he could; that he put on the air brakes and driver brakes, but he did not state that he reversed the engine.

The Supreme Court has said repeatedly that the question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, the case should not be withdrawn from the jury unless the conclusion follows

When case should be taken from jury.

as a matter of law that no recovery can be had upon any view which can be properly taken from the facts which the evidence tends to establish. Gardner vs. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140; Railroad Co. vs. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Railroad Co. vs. Cox, 145 U. S. 593, 12 Sup. Ct. 905; Dunlap vs. Railroad Co. 130 U. S. 649, 9 Sup. Ct. 647. In the case of Railroad Co. vs. Ives, the Supreme Court said: "When a given state of facts is such that reasonable men may fairly differ upon the question whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is one of law for the court." In Railway Co. vs. Chambers, 15 C. C. A. 327, 68 Fed. 148, it is said by the Court of Appeals for the Eighth circuit: "It is only when the facts are undisputed, and are such that reasonable men may fairly draw but one conclusion from them, that the question of the negligence is ever considered one of law for the court." The statement of these principles indicates the result upon the point considered. If it be conceded that the appellee was guilty of contributory negligence,—as to which it is not deemed necessary to express an opinion—, the issue was submitted to the jury whether or not appellant's employes discovered his danger in time by the exercise of reasonable care to avoid inflicting injury upon him. Upon this issue the verdict was against appellant. Can it be said that the facts bearing upon this question are undisputed, and such that reasonable men may fairly draw but one conclusion from them? The statement of the evidence above set out shows that the facts are not only in dispute between appellant's and appellee's witnesses, but that the statements of appellant's witnesses, are themselves conflicting and inconsistent. A jury of 12 men drew a different conclusion from these facts from the one that is now urged upon this court. The trial judge, who heard the

testimony, observed the witnesses, and had a better opportunity than this court to arrive at the truth upon this question, drew a different couclusion. Indeed, upon this question it is possible to draw a different conclusion from that drawn by the jury only upon the theory that the testimony favorable to the appellee, as above set out, is untrue.

It is province of jury to judge of credibility of witnesses.

But it was the province of the jury to judge of the credibility of the witnesses and of the probabilities of the testimony. It was for the jury, and not this court, to deal with the preponderance of the evidence. Says Mr. Justice Miller, in Barney vs. Schmeider, 9 Wall. 248: "The judge also tells us that there is very little discrepancy in the testimony, but where there is any discrepancy, however slight, the court must submit the matter to which it relates to the jury, because it is their province to weigh and balance the testimony, and not the court's." It is not intended to give approval to what is known as the "scintilla of proof doc

It is province of court to decide if evidence support verdict.

trine." "It is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor. That is the business of the jury. But, conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict?" Pleasants vs. Fant , 22 Wall. 116; Hichman vs. Jones, 9 Wall. 197; Barney vs. Schmeider, supra. Improvement Co. vs. Munson, 14 Wall. 442; Hepburn vs. Dubois, 12 Pet. 345. The trial court did not err in refusing to instruct the jury to return a verdict for the defendant.

2. It is urged that the court should have given the special charge to the effect that, if the appellant's station agent or operator at Marlow was negligent in not trying to prevent the plaintiff from going on the track at the time he was injured, that fact could not be considered as evidence of

defendant's negligence, unless it further appeared that it was a part of the duty of such agent or operator, or a part of his employment, to perform such act. The refusal to give this charge was not error. It was not contended in the pleadings that the conduct of this agent was a basis of recovery. The court in its charge no where submitted this as an issue. The matter with reference to the conduct of this agent was drawn out in his cross-examination, and was admissible for the purpose of affecting his credibility. If not admissible, objection should have been made to it at the time. It is not contended that it was suggested in argument as a ground of recovery.

*Instruction refused. Not error.*

3. Objection is made to the charge of the court as to the burden of proof to show contributory negligence. The objections urged are disposed of in the case of Railroad Co. vs. Harmon's Adm'r. 147 U. S. 581, 13 Sup. Ct. 557.

4. Counsel for appellee, in his argument to the jury, used the following language: "The defendant in this case has brought witnesses 650 miles,—its own employes,—and induced them to testify regardless of the truth. It is a well-known fact that railroads use every means in their power to win their cases, and defendant's witnesses in this case have testified under the constant fear that their further employment depends upon their testifying as the railroad dictated." This language was excepted to by the appellant, and the court was asked to take it from the jury, but declined to do so. These expressions were reprehensible, and should have received the prompt rebuke of the presiding judge. The right of argument in the trial of causes is a high privilege, and its abuse should not be tolerated by the trial courts. It is one thing, however, to find that counsel have forgotten their professional duty, and another to hold that the jury have been ignorant or weak enough to forget their obligation under oath to be governed by the law and evidence. A

*Improper argument of counsel.*

case is not to be reversed to punish counsel for impropriety in argument, but because it may be reasonably believed that such impropriety has influenced the jury. Some of the statements objected to are sustained by the evidence. Those that are not sustained by the evidence were known to the jury to be thus unsustained. Jurors are not children or creatures of wax in the hands of counsel. It cannot be taken for granted that prejudice lurks ever in their bosoms to be fanned into flame by a breath. It must be assumed that in the present instance they were men of intelligence and integrity. Regarded by law as competent to weigh conflicting phases of evidence, and to determine difficult and delicate questions of fact, it may be presumed that they were capable of discriminating as to matters that were not in evidence at all. Something must be indulged as to the honesty and intelligence of the jurors, else the system of trial by jury is impeached. If honest and intelligent, may it not be believed that the improper remarks of counsel, unsupported by evidence, were as likely to suggest to them the weakness of his case, as to bolster it? At least the determination of the question whether prejudice resulted from these remarks rested primarily in the discretion of the trial court upon motion for a new trial, and it will not in any case be presumed that the discretion over this subject committed to the trial court has been abused. It is not shown that the objectionable statements were made in the concluding argument, nor that the opportunity for and the fact of reply was not had. Hesitating much, but deferring to the authority of, and approving the reasoning in, the opinion of the Circuit Court of appeals for the Eighth circuit in the case of Railroad Co. vs. Curb, 13 C. C. A. 587, 66 Fed. 519, it is held that the matter complained of does not constitute reversible error. The judgment is affirmed.

SPRINGER, C. J. (dissenting). This action was brought by the appellee against the appellant to recover

damages resulting from certain injuries alleged to have been sustained by him on or about the 22d day of September, 1893, by colliding with a train of the appellant at a public crossing on its railway in or near the town of Marlow, in the Indian Territory. The train that injured appellee was traveling in a northerly direction. The appellee was driving his team along the public highway, which ran parallel with the railway, and from 30 to 50 feet from the main track. He was going in the same direction as the train. The wagon road turned at right angles across the railway at a point between 30 and 50 feet from the center of the track. On the east side of the main track, about 7 or 8 feet therefrom, was a switch track. On the west side of the main track, about 15 feet, therefrom, was another switch track, on which was standing a train of freight cars. The freight train had been cut in two, and a narrow opening left, just wide enough for a wagon and team to pass. At the time the train struck appellee his team had gotten over the main track, and the hind wheels of his wagon were between the two rails. The train that injured him was a freight train, and after it struck his wagon it was stopped from 300 to 500 yards north of the depot. The depot was about 100 feet north of the wagon road crossing. The complaint alleges that at the time indicated the plaintiff was driving his wagon and team across defendant's line of railway, in the town of Marlow, Indian Territory, at a public crossing, and that by gross and willful negligence and the negligence and incompetency of its employes the defendant ran a freight train into and collided with plaintiff's team and wagon, the plaintiff then being an occupent of said wagon, thereby demolishing the wagon, and violently throwing the plaintiff from the wagon and striking the ground, by which he sustained severe, permanent, and incurable injuries to his neck, spine, and other portions of his body, causing him long and painful suffering, etc. The answer of the defendant below

(7)

admits the collission and other formal facts, but avers that such collision occured, and the plaintiff's wagon and person were injured and damaged, through his own carelessness or negligence, and without any fault or negligence on the part of the defendant, or any of its agents, servants, or employes. The answer further states that the plaintiff was old and deaf, and negligently and carelessly, and without looking for the approach of defendant's train, which was in plain view, and without any effort on his part to learn whether the train was approaching, attempted to cross defendant's track, and in attempting to do so his wagon was struck by defendant's train; and that the damage to the wagon and the defendant was caused by his own carelessness and negligence, and without any fault or negligence on the part of the defendant. The case was tried by a jury, which returned a verdict for $5,050 in favor of the plaintiff below, on which judgment was entered against the railway company. A motion for a new trial was overruled, and the appellant brings the case to this court by appeal.

### SPECIFICATION OF ERRORS.

Appellant files specification of errors as follows:

1. The court erred in refusing to give the following instruction, requested by the appellant: "The court instructs the jury that under the law and the evidence in this case the plaintiff is not entitled to recover, and your verdict must be for the defendant." The appellant submits ten other specifications of error, which will be found in the brief of its counsel. Appellant sets forth in its brief the evidence from the record upon which it relies to show that there was no negligence in the operation of the train at the time in question. On the other hand, it alleges: "That it clearly appears therefrom that the bell on the engine was rung and the whistle sounded long and loudly before the engine reach-

ed the crossing, and that every possible warning was given of its approach; and that, after the trainmen had reason to believe that the appellee did not intend to stop or look, they did everything possible to stop the engine before reaching the crossing." And also that: "There was nothing on the engine or train except the bell and whistle to warn persons of its approach, and both of them were used. The bell was rung by the fireman, and the whistle sounded many times by the engineer." Appellant's counsel insist that, "the evidence without conflict shows that the collision occurred by reason of the negligence of the appellee, that he approached the crossing without exercising any care, and that the slightest diligence on his part would have prevented the collision," and submit the following authorities as bearing upon this point:

Mr. Beach, in his valuable work on Contributory Negligence, states the rule as follows: "When one approaches a point upon the highway where a railway track is crossed upon the same level, it is his plain duty to proceed with caution; and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise in so doing what the law regards as ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term 'ordinary care under the circumstances' shall mean in these cases. In the progress of the law in this behalf the question of care at railway crossings as affecting the traveler is no longer, as a rule, a question for the jury. The quantum of care is exactly prescribed as a matter of law. In attempting, to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down

the track. A multitude of decisions of all the courts enforce this reasonable rule. He must even come to a halt for this purpose." Beach, Contrib. Neg. § 63. "The rule is well established," says Miller, J., in speaking for the court of appeals of New York, "that it is the bounden duty of a traveler approaching a railroad crossing, before he passes over the same, to exercise a proper degree of care and caution, and to make vigilant use of his eyes and ears, for the purpose of ascertaining whether a train is approaching; and if by a proper use of his faculties, he could have discovered the train, and escaped injury, and fails to do so, he is chargeable with contributory negligence, and no recovery can be had." Salter vs. Railroad Co., 75 N. Y. 273-276. It has been well said that "The track itself is a warning of danger to those about to go upon it, and I think that it must be laid down as a principle of law    *    *    *    that persons about to cross a railroad track are bound to recognize the danger, and to make use of the sense of hearing as well as of sight,—and if either cannot be rendered available, the obligation to use the other is the stronger,—to ascertain, before attempting to cross it, whether a train is in dangerous proximity; and if they neglect to do this, but venture blindly upon the track without any effort to ascertain whether a train is approaching it must be at their own risk. Such conduct is of itself negligence, and should be so pronounced by the courts as matter of law." Railroad Co. vs. Miller, 25 Mich. 274, 290. And also: "if he looked," says Patterson, J., in speaking for the Supreme Court of California, "he saw, and having age and faculties to understand the dangers, is charged with a knowledge of them, and was bound to act upon that knowledge as a prudent and cautious man would under the circumstances. His failure to so act was negligence which, notwithstanding the negligence of the defendant, the law regards as such a contributory cause on his part, and will make the injury his own misfortune, and

relieve the other from liability therefor." Glascock vs. Railroad Co., 14 Pac. 518, 520. "The law presumes," says the Supreme Court of Indiana, "that one having the ordinary sense of sight must have seen that which was within the range of his vision, if he gave attention and looked; and if he saw the train approaching, and pursued his way notwithstanding he is to be regarded as taking the risk upon himself." Railway Co. vs. Hedges, 20 N. E. 530, 533. "It is nothing to the purpose," says Wright, J., in speaking for the Supreme Court of Ohio, "that he should say he looked this way and that, when the object he seeks to discover is plainly and palpably before him, and he fails to see it. Either his statement is not true, or his exercise of vision was such as to be not only negligent, but culpable." Railroad Co. vs. Elliott. 28 Ohio St. 340, 355. Mr. Beach says: "If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or if he did look, that he did not heed what he saw. Such conduct is held negligent per se." Beach, Contrib. Neg. § 63. The Supreme Court of Pennsylvania says: "It is in vain for one to say that he looked and listened, if, in despite of what he says his eyes and ears must have told him, he walked directly in front of the locomotive." Marland vs. Railroad Co., 123 Pa. St. 487, 489, 16 Atl. 624. Mr. Justice Field, in speaking for the court said: "She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train was coming, and yet undertook

to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case we cannot see any grounds for a recovery by the plaintiff." Railroad Co. vs. Houston, 95 U. S 697, 702. "First. The plaintiff was familiar with the crossing, had often passed it, and the usual sign printed in large letters over it gave express warning to persons on the highway to 'look out for the cars.'" Schofield vs. Railroad Co. 2 McCrary, 268, 270, 8 Fed. 488. "Second. At the place of crossing the highway and railroad are nearly on a level, and for a distance of at least six hundred feet before reaching the crossing the plaintiff had a full view of the railroad from the depot to the crossing, a distance of seventy rods, and for a distance of about thirty-three feet, upon coming to the track, he could see beyond the depot, a distance of some twenty rods." "Third. If at any time after the train passed the depot the plaintiff had looked in that direction, he would have seen it, and if not then too near the train for escape, by stopping his horse he could have avoided the accident and injury." "That these facts," says Mr. Justice McCrary, "standing alone, show contributory negligence on the part of the plaintiff, is too plain to admit of doubt or argument." The judgment in that case was affirmed by the Supreme Court of the United States, and in its opinion it states the rule contended for very, very strongly. 114 U. S. 615, 5 Sup. Ct. 1125.

In reference to the point as to whether there was any conflict in the testimony in the case which required its submission to the jury, counsel for appellant cites the following extracts from reported cases: The case of Artz vs. Rail-

road Co. is on all fours with the case at bar. In that case a public road and a railroad ran parallel with each other, and on the same level. Artz testified that he looked and listened for trains, but saw none. He recovered a judgment in the lower court. In reversing the judgment and holding that he could not recover, the Supreme Court said: "But it is urged by the appellee's counsel that the plaintiff testified that he did both look and listen to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. It constitutes therefore, no conflict. Suppose that the fact is conceded that the sun was shining bright and clear at a specified time, and a witness, having good eyes, should testify that at the same time he looked and did not see it shine. Could this testimony be true? The witness may have been told that it was necessary to prove in the case that he did look, and did not see the sun shine. He may have thought of it with a desire that it should have been so. He may have made himself first believe it was so, and this belief may have ripened into a conviction of its verity, and possibly he even may testify to it in the self-con- scientiousness of integrity. But, after all, in the very nature of things, it cannot be true, and hence cannot, in the law form any basis for a conflict upon which to rest a verdict. A man may possibly think he sees an object which has no existence in fact, but which it may be difficult, if not im- possible to prove did not exist, or was not seen. But, an object and power of sight being conceded, the one may not negative the other. We have given the cases upon this subject in the different states a somewhat extended examina- tion, and almost without exception they concur in holding that, where a person, knowingly about to cross a railroad

track, may have an unobstructed view of the railroad, so as to know of the approach of a train a sufficient time to clearly avoid any injury from it, he cannot, as a matter of law, recover, although the railway company may have been also negligent, or have neglected to perform a statutory requirement." 34 Iowa, 153, 160. Counsel for appellant also cite the case of Hayden vs. Railway Co. (Decided by the Supreme Court of Missouri) 28 S. W. 74, 75. And also the case of Kelsay vs. Railway Co. (Mo. Sup.) 30 S. W. 339, 341, 342. Also Railroad Co. vs. Butler, 103 Ind. 31, 2 N. E. 138. Also the following: "Under the rule laid down by the Supreme Court of the United States, the United States court of appeals, and the courts of the different states, the appellee, under the undisputed evidence, is not entitled to recover. This rule is stated as follows by Mr. Justice Brewer: 'The rule laid down by the Supreme Court of the United States is, briefly, that a man must look and listen when approaching a railroad crossing; and if by looking or listening he can ascertain the approach of a train, he is guilty of contributory negligence if he fails to do so.' " In the case just quoted from there was nothing to obstruct the view of the train as the traveler approached the crossing, with exception of the smoke. In holding that he was not entitled to recover, the court said: "He could see in either direction. There was nothing to obstruct the vision toward the west, except the matter of smoke. If he had looked, there being no smoke in the way, he must have seen the train; and there cannot be a shadow of a question but that he would have been guilty of contributory negligence in thus approaching the track without noticing it. Does this question of the smoke change the case? We must remember that he was familiar with the track, because he had crossed it daily during the two months prior thereto. He must have known that there were two tracks, and that a train was liable to come on each track; and if, when approaching a

track, he finds anything which temporarily obstructs his vision, it is his duty to wait until the temporary obstruction is removed. He cannot say: There is something temporarily obstructing my vision, but I will take it for granted there is no danger, and undertake to cross the track. If it is a mere temporary obstruction, something that would pass away in a moment, as, in this case, a breath of wind moving the smoke, he is guilty of contributory negligence, if he pushes ahead with the knowledge that there is a track upon which a train may be approaching at any time. * * * So, whether he could see and did not look, or could not have seen and did not wait until that obstruction had passed away, is immaterial; one or the other must have been true, and in either event he is guilty of contributory negligence. The law is laid down clearly that a man must look, and listen, and if, by looking and listening, he could ascertain the approach of the train, and fails to do so, he is guilty of contributory negligence, and cannot recover." McCrory vs. Railway Co. 31 Fed. 531; Railroad Co. vs Miller 25 Mich. 274; Salter vs. Railroad Co. 75 N. Y. 273; Glascock vs. Railroad Co. (Cal.) 14 Pac. 518, 520; Railway Co. vs. Hedges (Ind. Sup.) 20 N. E. 530; and others. The rule that obtains in this jurisdiction, as stated by the United States Circuit court of appeals for this circuit is as follows: "It is the duty of such a traveler to stop and look and listen before he crosses a single track." Railway Co. vs. Moseley, 6 C. C. A. 641, 57 Fed. 921, 924; Dunning vs. Bond, 38 Fed. 813, 815; and others. In the case at bar the appellee did not stop or look or listen. It may be contended that because the appellee was deaf, his reckless conduct should be overlooked, but that cannot be. That fact cast upon him an obligation to look more carefully than would have been necessary had his hearing been good. He knew better than all others of that infirmity, and that he was compelled to rely entirely upon his eyes to ascertain whether or not it was safe to go upon the railroad.

"On the other hand," says the Supreme Court of Texas, "deafness, so far from excusing one for a failure to use his eyesight, rather imposes upon him the duty of increased vigilance in the employment of that faculty; and when contributory negligence is charged, it is, as a rule, not sufficient for the plaintiff to argue his deafness by way of excuse. It may be of the very essence of the plaintiff's default that, being deaf, he put himself in a position where his deafness would especially expose him to injury. The rule is *caveat surdus.*" Railway Co. vs. Garcia, 75 Tex. 583, 589, 13 S. W. 223.

Counsel for appellee submits the following points and authorities on the subject of contributory negligence: "Contributory negligence in law is that sort of negligence which, being a cause of the injury, is of such a character that the defendant could not avoid the effects of it." Whitt. Neg. § 373. "In considering the doctrine of contributory negligence, it is well to remember that, after the plaintiff has shown the defendant has been negligent, that then the defendant has to show—First, that the plaintiff has been negligent in respect to the matter complained of, and might have avoided the consequences of defendant's negligence secondly, that the plaintiff's negligence has been of such a character that the defendant could not avoid its effects.' Id. § 381.

On the subject of conflict in the testimony, appellee submits the following points and authorities: "The rule briefly is that, where the facts are undisputed, and where but one reasonable inference can be drawn from them, the question is one of law the court; but where the facts are left by the evidence in dispute, or where fair minds might draw different conclusions from them, it must go to the jury to resolve the dispute in the one case, or to draw the inference in the other. Randall vs. Railroad Co. 109 U. S. 478, 3 Sup.

Ct. 322; Railroad Co. vs. Jones, 95 U. S. 439; District of Columbia vs. McElligott, 117 U. S. 621, 6 Sup. Ct. 884." The foregoing quotation is taken from argument of counsel in Railroad Co. vs. Harmon, 147 U. S. 571. Mr. Chief Justice Fuller in this case approves the language used in these words: "It is contended that it was error to leave the question of contributory negligence to the jury. We do not think so. This was not a case where the facts were undisputed, and where but one reasonable inference could be drawn from them." 13 Sup. Ct. 557. It will be observed that two things must concur before the court is authorized to substitute itself for the jury, and direct a verdict: First, the evidence must be undisputed; and second it must be of such a character as that but one reasonable inference can be drawn from it. Mr. Chief Justice Fuller, in the case of Gardner vs. Railroad Co., 150 U. S. 349-361, on page 361 (14 Sup. Ct. 140) of the opinion says: "The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." Mr. Justice Lamar, in the case of Railway Co. vs. Ives, 144 U. S. 409-434, on page 417 (12 Sup. Ct. 679) says: "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." In the case just cited Justice Lamar quotes with approval as follows from the Supreme Court of Massachusetts: "Plaintiff, a woman about 65 years old, and possessed of good sight and hearing, was injured at a railroad crossing. The railroad had been raised several feet higher

than the sidewalk, and the work of grading was still un
finished, and the crossing was in a broken condition. There
were three tracks and a train was approaching on the
middle one. The view was obstructed somewhat with build
ings, but after reaching the first track it was clear. The
evidence showed that the plaintiff was familiar with the
passing of trains; that she did not look before going upon
the track; and, that, if she had looked she could have seen
the train a quarter of a mile. When the whistle sounded
she looked directly at the train, and hurried to get across
Plaintiff testified that she looked before going upon the
track, but did not see the train before it whistled; that the
only warning she had was the noise of its approach, after
she was on the first track; and that she did not then look to
see where it was, or on which track it was coming, but
started to cross as fast as possible, and in so doing stumbled
and fell between the rails. The signals required by the
statute were not given. Held that it did not appear as a
matter of law that plaintiff was guilty of gross or willful
negligence, and that it was proper to submit the question to
the jury."

Appellee in his brief, sums up his contention as to
evidence in the case, as follows: "That the plaintiff at
tempted to cross defendant's railway at a time when its
train was so far distant as not to create apparent danger is
abundantly established by the evidence. That the plaintiff
would have succeeded in crossing the track in safety had
his team not become frightened at defendant's freight car
which were standing upon the west switch of the track, is
also established. It is likewise established that defendant's
employes in control of the train discovered the plaintiff upon
the track, at a sufficient distance away to enable them to
avoid injuring him; and that they slacked their train, and
afterwards, with the full knowledge that his team was balk

ng upon the track, increased the speed of the train, is established, it seems to us, beyond controversy.''

Further authorities in regard to the burden of proof, nd other questions discussed by the counsel on either side, vill be found in appellee's brief.

As suggested by appellee's counsel, the record in this ase is voluminous, but the action of the appellant in asking he trial court to direct a verdict for the defendant necssitates an examination of all the evidence in the case. In he statement above submitted the contention of counsel on ither side as to what the testimony establishes in the case s set forth. Counsel for appellee states in his brief, whenver there is substantial conflict in the testimony the queson is for the jury, and insists that the rule is as follows: The rule briefly stated, is that, where the facts are undisputed, and where but one reasonable inference can be rawn from them, the question is one of law for the court; ut where the facts are left by the evidence in dispute, or here fair minds might draw different conclusions from hem, it must go to the jury to resolve the dispute in the he case, or to draw the inference from the other.'' The ile as here stated is certainly as favorable to the appellee s it could be possibly stated. In the case of Gardner vs. ailway Co., Mr. Chief Justice Fuller, pronouncing the pinion of the court says: ''The question of negligence is he of law for the court only where the facts are such that ll reasonable men must draw the same conclusion from em; or, in other words, a case should not be withdrawn om the jury unless the conclusion follows as a matter of w that no recovery can be had upon any view which can be roperly taken of the facts the evidence tends to establish.'' substantial conflict in the testimony means a conflict in the stimony in reference to a material or controlling fact; and here there is no such conflict with reference to facts which

are essential to plaintiff's cause of action or to the defendant's defense, such facts, if proven may be regarded as undisputed. Is there any conflict in the testimony in reference to the facts which are essential to appellee's recovery, or to the facts essential to entitle appellant to a judgment in its favor? There is a great conflict in the testimony upon immaterial points. The testimony is conflicting in regard to the distance between the switch tracks and the main track of the railroad where the accident occurred, the distance at which a train approaching the wagon road crossing could be seen from that crossing, and as to the extent of the injury received by the appellee. But these matters and others of like character, are immaterial, and the conflict in the testimony in reference to them need not be taken into consideration in determining whether the court below erred in refusing to give the first instruction asked by appellant, namely, "that the jury, under the law and evidence in the case, should return a verdict for the defendant." Upon a careful examination of all the evidence in the case, it appears that there is no conflict of testimony upon the following points First, That the appellee attempted to cross defendant's railway in broad day light, at the crossing of a public highway, in the town of Marlow, I. T. from which crossing, and in the direction from which appellee approached the track, the train of cars which collided with his wagon and caused his injury could have been seen for a distance of at least four or five hundred yards. Second. That the train which was approaching was a heavily loaded freight train, and that it was not the intention of its managers to stop at that station, that it was running, when it reached a distance of about a half mile from the crossing, at the rate of between 25 and 30 miles an hour. Third, That the appellee was deaf, and stated that he did not hear the approaching train, and that he did not see it; that he was not aware of its presence until the collision occurred; and that the employes in charge of the

train did not know that the appellee was deaf. Fourth, That the engineer and fireman on the locomotive drawing the train, when it was about five or six hundred feet from the crossing, discovered that appellee was driving towards the track, and before he reached the main track gave the usual stock alarm whistles, and rang the bell on the locomotive, which was heard by all persons who witnessed the accident, except the appellee; and that the air and driver brakes were applied. Fifth. That appellee did not check his team, but drove directly across the track in front of the approaching engine and train, which struck the wagon, just after the fore wheels had passed over the west rail of the track. As before stated, there is no conflict in the testimony in regard to these facts. There is, however, an apparent conflict upon another point to which reference should be made; S. H. Riley, a witness for the appellee, testified that he was unloading a load of hay in a lumber yard, 150 feet west from the crossing where the collision occurred, and that the train was coming rapidly, and the train men saw him (Appellee), and whistled and checked up, and just about 300 feet from where it checked up it put on extra power and speed, pushed by;" that he "saw the increased rate of speed, saw the extra speed of the train." He further said the train was running 30 or 35 miles an hour at that time, from what he could see. No other witnesses in the case testified that the speed of the train was increased after the stock alarm whistle was blown, except witness Riley. Witnesses Bechtol, the station agent; Adams, the fireman; in the locomotive; Clark, the engineer in charge of the engine,—all testified positively that the speed of the train was not increased after the stock alarm whistle was blown. Engineer Clark testified that everything possible was done to stop the train after they saw that the appellee continued to drive towards the track, and paid no attention to their signals; that the locomotive, when the stock alarm was

sounded, was about five or six hundred feet from the crossing where the accident occurred, and that at the rate of speed at which the train was going he could not have stopped the train, after realizing the danger the appellee was in, before striking him.    Fireman Adams testified that after the engineer sounded his alarm whistle he used every effort and did everything he could to stop the train; that he used his air brakes, but could not stop it.    There is no testimony in the record tending to show that the train could have been stopped in time to prevent the collision, after the engineer discovered the danger into which the appellee was driving.    On the contrary, the employes of the company managing the locomotive assert positively that it could not have been stopped, and also that they used every effort in their power to stop it, and prevent the collision.    This fact, therefore, remains in the record undisputed; that the train could not have been stopped in time to prevent the collision, after the engineer had any reason to believe that a collision was probable.    If it were true as stated by witness Riley, that when the stock alarm was sounded the engine increased its speed, being then within 400 feet of where the collision occurred, this fact would not be evidence of negligence on the part of the railroad company, in view of the undisputed fact in the case that at that time it was impossible to have stopped the train before the collision would have occurred. It frequently happens in the management of railway trains that the engineer, seeing it impossible to prevent a collision with obstructions on the track, increases the speed of the engine for the purpose of striking the obstruction with sufficient force to throw it from the track, and thus save the train from being wrecked.    Of all persons, the engineer and fireman on a locomotive are most interested in preventing collisions of the kind in question.    Their lives are at stake, and self-preservation, if no other motive, would induce them to use every means in their power to prevent collisions which

would endanger their lives.   It must be reasonably assumed that, under a condition of facts, such as was brought out in the case at bar, they would have prevented a collision if it had been possible to do so.   They have testified that they did all in their power to prevent the collision, and there is not a particle of testimony in conflict with their statements on this point,   Even if they had increased the speed of the train, as stated by witness Riley, that fact would not negative the positive statement that they had used every effort in their power to prevent the collision, nor would it be in conflict with it in any way; for when the collision was inevitable the increasing of the speed would be no evidence of negligence on the part of the railroad company in the management of the train, and does not conflict in any way with the undisputed testimony that the collision was inevitable.   There is, therefore, no evidence in the record which shows, or which even tends to show, that the railroad company was, so far as the collision is concerned, guilty of negligence in the management of its train or, that there was any negligence or incompetency on the part of any of its employes.

The injury which appellee received in this case is attributable solely to his own negligence.   The Supreme Court of Indiana, in the case of Railway Co. vs. Walker, 15 N. E. 234, lays down the rule that persons operating a train upon a railroad are under no obligations to slacken the speed of the train, or to bring the same to a stop, when they notice a person crossing, or about to cross, the track at its intecsection with the highway; but they must presume that such person will himself take all proper precaution to avoid injury. It cannot be possible that trains must be brought to a halt at every highway crossing in order to allow passengers to cross.   Mr. Beach, in his work on Contributory Negligence, states that a person who approaches a point upon the highway where a railway track is crossed upon the same level

(8)

must assume that there is danger, and act with ordinary
prudence and circumspection upon that assumption; that the
law defines precisely what the term "ordinary care under
the circumstances" shall mean in such cases; that in the
progress of the law in this behalf the question of care at rail-
way crossings, as affecting the traveler, is no longer, as a
rule, a question for the jury. The quantum of care is exactly
prescribed as a matter of law. He must listen for signals,
notice signs put up as warnings, and look attentively up and
down the track, He must even come to a halt for this pur-
pose. A multitude of decisions of all the courts enforce this
rule. In the case of Salter vs. Railroad Co., 75 N. Y. 273,
Mr. Justice Miller, speaking for the court of appeals for
that state, says: "That it is the bounden duty of a traveler
approaching a railroad crossing, before he passes over the
same, to exercise a proper degree of care and caution, and to
make vigilant use of his eyes and ears, for the purpose of
ascertaining whether a train is approaching; and, if, by a
proper use of his faculties, he could have discovered the
train, and escaped injury, and fails to do so, he is chargeable
with contributory negligence, and no recovery can be had."
Mr. Beach, in section 63, above quoted, states further: "If
a traveler by looking could see an approaching train in time
to escape, it will be presumed, in case he is injured by a
collision, either that he did not look, or, if he did look, that
he did not heed what he saw. Such conduct is held neglig-
ence per se." Mr. Justice Field, speaking for the Supreme
Court of the United States in the case of Railroad Co. vs.
Houston, 95 U. S. 697, says that a person, before attempting
to cross a railway track, is bound to listen and to look in
order to avoid an approaching train. If he should omit to
use his senses, and walks thoughtlessly upon the track, he is
guilty of culpable negligence, and so far contributes to his
injury as to deprive him of any right to complain of others
In this case, as in the case of Hayden vs. Railway Co.

(decided by the Supreme Court of Missouri), the crucial question is, could the appellee, when he was in a place of safety, from 15 to 30 feet from the crossing as the case may be, with nothing to distract his attention from the situation with reference thereto, have seen the approaching train had he looked in the direction from which it was coming? Could the appellee when he turned from the road, which was parallel with railroad track, into the road which crossed the track, and being then a distance from 30 to 50 feet from the main track where the collision occurred, by turning his eyes in the direction from which the train was approaching, have seen it? It was a physical impossibility for him to have failed to see the approaching train if he had looked in that direction, as it was his duty to do, while yet in a place of safety, and before entering upon the line of danger. Had he done so there could be no question that he would have stopped his team, until the train had passed, and then crossed over in safety. But for some unexplained reason he failed to do so. And thus it is, though the defendant may have been negligent in some respects, which does not appear to have been the case, yet the appellee, having sustained his injury through his own negligence, by failing to discharge the duty imposed upon him by the law in his situation, cannot recover for the alleged injury which he sustained. 28 S. W. 74, 75. The Supreme Court of Missouri, in the case of Kelsay vs. Railway Co. says: "The duty of a traveler upon a highway, in approaching a railway crossing, to use all reasonable precaution to ascertain the approach of trains and avoid injury by them, is well settled law, not only in this court, but perhaps all the courts of this country. The rule imperatively requires him to look carefully in both directions at a convenient distance from the crossing before venturing upon it, if, by looking, a train could be seen. The duty is a continuing one until the crossing is reached. It is his duty to look. He cannot close his eyes, and thereby

relieve himself of the consequences of his own neglect." Mr. Justice Brewer, in the case of McCrory vs. Railway Co. 31 Fed. 531, said: "The rule laid down by the Supreme Court of the United States is, briefly, that a man must look and listen when approaching a railroad crossing; and if by looking and listening he can ascertain the approach of a train, he is guilty of contributory negligence if he fails to do so." And in the case of Railway Co. vs. Moseley 6 C. C. A. 641, 57 Fed. 921, the Circuit Court of appeals for the Eighth circuit said: "It is the duty of such a traveler to stop and look and listen before he crosses a single track." It is conceded in this case that the defendant was deaf, and that he did not hear the approaching train; but it is equally certain and undisputed that he had the full use of his faculty of sight." Deafness, so far from excusing one from a failure to use his eyesight, rather imposes upon him the duty of increased vigilance in the employment of that faculty." Railway Co. vs. Garcia, 75 Tex. 583, 13 S. W. 223. Appellee having been deaf, and having resided for several years within a very short distance of the place where the accident occurred, was charged with the duty not to put himself in a position where his deafness would specially expose him to injury. But there was no defect in his eyesight, and the proper use of such faculty would have enabled him to see the approaching train in ample time to have prevented the collision if he had looked before he attempted to cross the track.

There are several other errors assigned, which we do not deem it necessary to consider. In my opinion, the court below should have instructed the jury to return a verdict for the defendant, as requested by appellant's counsel.